**TEXAS & N. O. R. CO. v. TILLEY.**
(No. 3427.)

Court of Civil Appeals of Texas. Texarkana.
July 14, 1927.

Rehearing Denied Sept. 8, 1927.

1. **Master and servant** ⬤⟿276(8)—**Finding that brakeman was injured by sand which was cast into fire box and passed back over train at time and place to which he testified held sustained by evidence.**

In suit for personal injuries brought by head brakeman on freight train against railroad, evidence *held* to sustain finding of jury that brakeman sustained injury from sand which was cast into fire box of engine to remove soot on flues and passed back over train, striking his eyes, at time and place to which he testified rather than at another time and place.

2. **Appeal and error** ⬤⟿994(2)—**Finding involving credibility of witnesses is not without support.**

Where determination of question by jury involves the credibility of witnesses it cannot be said that the finding is without support.

3. **Master and servant** ⬤⟿217(26)—**Where negligence of railroad in failing to promulgate rules was not submitted, assumption of risk by injured brakeman could not be predicated on his knowledge of absence of rules.**

Where negligence of railroad failing to adopt and promulgate rules requiring the giving of notice to brakeman when flues of engine were to be sanded was not submitted to jury as ground of recovery, assumption of risk of injury by brakeman could not be predicated on his knowledge of absence of such rules.

4. **Master and servant** ⬤⟿265(13)—**Railroad had burden of proving facts establishing assumption of risk by injured brakeman.**

Burden of proving facts essential to establishing assumption of risk of injury by brakeman, injured by sand from engine striking his eyes, was upon the railroad.

5. **Trial** ⬤⟿350(3)—**Refusing to submit issues requested by railroad whether brakeman knew that flues of engine would be sanded without warning was not error, where findings favorable to railroad would have been unwarranted.**

Trial court did not err in refusing to submit issues requested by railroad whether brakeman injured by sand from flues of engine striking eyes knew that the flues of the engine would be sanded without any warning being given, where under the evidence the jury could not have found that he had such knowledge.

6. **Master and servant** ⬤⟿213(3)—**Brakeman did not assume risk of negligent sanding of flues of engine without notice unless it was commonly done or he had actual notice of custom of so doing.**

Where sanding of flues of engine without notice was a negligent act, a brakeman injured thereby did not assume the risk unless this pro-

cedure was one commonly adopted or unless it was a custom of which he had actual notice.

7. **Master and servant** ⬤⟿265(1)—**Where injured brakeman alleged railroad was intrastate carrier of intrastate shipment, railroad had burden of proving contrary.**

Where brakeman suing for personal injuries alleged that railroad was intrastate carrier transporting intrastate shipment at time of injury and the carrier alleged that the contrary was true, railroad had burden of proving interstate character.

8. **Master and servant** ⬤⟿276(1)—**Fact held not to show railroad engaged in interstate commerce when brakeman was injured (federal Employers' Liability Act [45 USCA §§ 51–59]).**

In action for personal injuries brought by brakeman against railroad, fact respecting another train did not show that railroad was engaged in interstate commerce at time of the injury, and federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665) was inapplicable.

9. **Master and servant** ⬤⟿250¼—**Liability of railroad engaged in intrastate commerce, for injury to brakeman, is governed by state law (federal Employers' Liability Act [45 USCA §§ 51–59]).**

Where railroad is engaged in intrastate commerce at the time its brakeman is injured, not interstate commerce, its liability is governed by laws of state, not federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665).

10. **Master and servant** ⬤⟿250¼—**State law governing assumption of risk held not involved in brakeman's suit for injuries by employer railroad.**

Where railroad's liability to injured brakeman is governed by state law, the issue of assumption of risk of injury is not involved.

11. **Appeal and error** ⬤⟿1060(4)—**Mention of attorney's fees during deliberations of jury on railroad's liability to injured brakeman held harmless, where lowest amount of damages suggested was allowed.**

In action for personal injuries by brakeman against railroad, that mention of attorney's fees was made during the deliberations of the jury *held* not prejudicial, where the jurors agreed to the lowest amount of damages which had been suggested.

12. **Judgment** ⬤⟿675(1)—**Attorney having interest in subject-matter of suit for personal injuries who appeared actively in case and agreed to abide by judgment held bound by judgment.**

Where attorney having contract entitling him to half interest in the subject-matter of a suit for personal injuries was not party thereto, but his name was signed to the pleadings and he actively appeared in the prosecution of the case and before its final disposition disclaimed any interest to further liability of defendant by reason of contract and agreed to abide by judgment rendered, attorney *held* bound by judgment.

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**13. Parties ⊜⟩80(1)—Continuing trial to judgment over defendant's trial objection that attorney having interest in suit was not party plaintiff held not error, where attorney was bound by judgment.**

Court did not err in overruling defendant's objection to further proceedings made during trial for first time, on ground that one of plaintiff's attorneys had half interest in subject-matter of suit but was not party plaintiff, where this attorney was bound by the judgment which was rendered.

Appeal from District Court, Cherokee County; C. A. Hodges, Judge.

Suit by Guy Tilley against the Texas & New Orleans Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Guinn & Guinn, of Rusk, and Garrison & Watson, of Houston, for appellant.

W. H. Shook, of Dallas, and G. W. Gibson, of Jacksonville, for appellee.

HODGES, J. The appellee, Tilley, filed this suit against the appellant to recover damages for personal injuries. He alleged that on or about January 21, 1924, he was in the service of the appellant as head brakeman on a freight train running from Dallas to Beaumont, in this state. As the train approached Fry's Gap, a station on that line, he was required, in the performance of his duties and in response to a signal from the engineer, to take a position on top of the cars near the front end. He was there for the purpose of transmitting signals from the conductor to the engineer. While he was in that position the engineer, or the fireman, sanded the flues of the engine; that is, cast sand into the fire box for the purpose of removing the soot which had collected on the inside of the flues; and particles of hot sand passed back over the train, causing an injury to his eyes which permanently impaired his vision. He charged negligence on the part of the appellant in failing to adopt and promulgate rules requiring engineers and firemen when about to sand flues to give notice to brakemen on top of cars. He charged negligence on the part of the engineer and fireman in sanding the flues at an unusual time and place and without giving him notice that such an operation was about to be performed.

In addition to a general denial the appellant pleaded contributory negligence and assumed risk. It was also alleged in the answer that at the time of the injury the appellant was engaged in interstate commerce.

The court submitted the following issues:

"(1) Did the employees of the defendant in charge of its engine, and at an unusual time and place, cast sand into the fire box of its engine? Answer: Yes.

"(2) Was the employee, in casting sand in-to the fire box at such time, guilty of negligence as that term has been defined to you? Answer: Yes.

"(3) Was such negligence a proximate cause, as that term has been defined, of the plaintiff's injuries, if any? Answer: Yes.

"(4) Did the defendant assume the risk, as that term has been herein defined, of such negligence? Answer: No.

"(5) Did the employees of defendant in charge of its engine cast sand into the fire box of its engine as the train was approaching Fry's Gap, and at a time when plaintiff was on top of its cars near said engine, without giving him any warning that the act was about to be done? Answer: Yes."

The jury also found that the plaintiff was not guilty of contributory negligence, and assessed his damages at $5,000.

[1, 2] The record indicates that the two main defenses relied on in the trial below were: (1) That the plaintiff was not injured at the time and in the manner alleged by him; and (2) that if he was the injury was one which he had assumed.

The appellee testified in part as follows:

"As to how that happened, I will state that on January 21, 1924, we were going into Jacksonville from west towards Dallas, and approaching Fry's Gap hill and near the station the engineer blew for the high-ball, and my place as head brakeman called for me to be on the second car from the head end. My place was on the head end as head brakeman, on top of the train, where I can pass signals; and if the engineer cannot see the rear end the head brakeman has got to get in a position to see the rear end and pass the signals to the engineer; and just before we got to the station the fireman sanded his flues to get the soot out of the engine, where the engine could steam better, and he failed to notify me. He sanded his flues out, and the hot sand hit me in my eye. It was customary for the operators of the engine to give some kind of notice to the head brakeman that they were going to sand the flues. The two engineers that I worked with a whole lot—Mr. Charley Dodge and Mr. Barnes —on the freight local between Rockland and Jacksonville, I can say I was never on top of the train in my life when his fireman went to sand the engine without their notifying me to get off the top, that he was going to sand the engine, which he did with four short blasts of the whistle; and if he would catch me looking he would give me a sign to come over, that he was going to sand the engine. On this occasion I did not have any warning of any kind. Without him giving me the warning I could not have known it until it hit me. My duties required me to be on top in going into the station. The rear brakeman decorates the caboose, and the head one decorates the train. My business was to watch the hind end of the train and pass signals to the head end. To decorate a train is to get on top of it and get out where you can be seen; that is a technical term. This sanding business is not an operation that you have got to make in an emergency; they can select their time—any time—to sand an engine out; it is done to get the soot out of the

flues and get the engine to steaming better. The engines use oil for fuel. In that kind of engines you have sparks when you put the sand in, but you do not have them normally; not like you do in the coal burners. Nothing comes back except when you sand the engine."

Appellant presented testimony which tended to contradict appellee's statements concerning the time and place of his injury. Some question is raised in this appeal as to the sufficiency of the evidence to support the special findings in appellee's favor upon that issue. But, as the determination of that question involved the credibility of the witnesses, it cannot here be said that the finding of the jury is without support.

[3] Appellant also insists that a peremptory instruction should have been given in its favor on the ground that it appeared from the evidence that the injury sustained resulted from a risk which the appellee had assumed.

One of the charges of negligence was the failure of the appellant to adopt and promulgate rules regulating and requiring the giving of notice to brakemen when the flues were to be sanded. It is claimed that the appellee knew at the time of the injury that no such rules had been adopted, and for that reason he assumed that risk. A sufficient answer to that complaint is that the trial court did not submit to the jury that issue of negligence as a ground of recovery. With that question eliminated, the defense of assumed risk is reduced to the general proposition that the injury resulted from a danger which was incident to the ordinary operation of the train. It was undisputed that sanding flues without notice did create a situation dangerous to those occupying the position which the appellee stated he was in when his eye was injured. It also appeared from the evidence that brakemen were called to that position by signals from the engineer, and while there remained within sight of both the engineer and fireman. It is thus made clear that the dangers of the situation brakemen were required to occupy might be materially reduced by giving them notice that sand was to be cast into the fire box. The operation of sanding was one which, according to the evidence, usually took place about every 20 miles and was not called for by any suddenly arising emergency.

It appears from the record that the case was tried in the court below upon the assumption that the appellant was engaged in interstate commerce and that its defenses were controlled by the federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665). As a preamble to the interrogatories submitted to the jury the court gave the following explanations and definitions:

"Assumed risk, as that term is used in these instructions, in its legal signification, is a risk ordinarily incident to the employment in which one is engaged. A servant in the employ of his master assumes the risks and damages which are ordinarily incident to his employment, and he assumes the risk and dangers arising from the negligence of the master, when such negligence is known to him, or when such negligence is so plainly discoverable as (that) he must have known thereof.

."In this connection you are instructed that the plaintiff, while in the employ of the defendant company, assumed, as a matter of law, all of the risks of injury which were ordinarily incident to the employment in which he was engaged. If you believe from the evidence that his injuries, if any, grew out of or were occasioned by a risk that was ordinarily incident to his employment, then he would be held to have assumed the risk.

"By the expression, 'a risk ordinarily incident to his employment,' is meant a risk of injury that does not arise or grow out of an act of negligence on the part of the defendant, its agents, servants or employees; and when a risk is created by an act of negligence on the part of the defendant, its agents, servants or employees, such risk is not one ordinarily incident to the employment, unless such negligence was known to the plaintiff at the time, or was so plainly observable that he must necessarily have known thereof."

Appellant requested the court to submit the following additional interrogatories:

"Did the plaintiff, at the time and prior thereto, know that the flues of a locomotive would be sanded by its employees without giving any warning to him, or to the other employees?

"Did the plaintiff, at the time and prior thereto, when he claims to have been injured, know that the flues of an engine would be sanded by the operators of an engine without warning the brakeman, who might be on the top of the train?"

The refusal of the court to submit those interrogatories is assigned as error.

In specially pleading the defense of assumed risk the appellant had alleged:

"That the plaintiff was an experienced brakeman and had been in the service of the defendant for some time and knew that in order to successfully operate defendant's trains it was necessary to sand the flues of the engine; that the plaintiff, at said time and prior thereto, was thoroughly conversant with the way and manner in which the flues of the engine were sanded and the necessity therefor; that if the plaintiff, in the performance of his duties, got a particle of hot sand in his eye by reason of sanding the flues, that said injury, if any, was by the plaintiff received while in the performance of his services as a brakeman and was the result of one of the ordinary risks incident to his employment."

[4-6] It is conceded that the appellee was an experienced brakeman and that he knew it was necessary to sand the flues of the engine. It may also be said that he knew the dangers attending that operation. But it is denied that he was "conversant with

the way and manner in which the flues of the engine were sanded," if by that is meant that he knew that flues were customarily sanded without notice to brakemen who might be on top of the cars. The issues then were: Was there a custom of sanding flues without giving such notice, and, did appellee know of that custom? Appellant had the right to demand the submission of those questions in a form which called for definite findings of fact, if the evidence justified a finding in its favor. The form of interrogatories chosen by appellant did not present the real issue made by the evidence. Appellant had the burden of proving the facts essential to establish its defense of assumed risk. Appellee testified that on the trains with which he had been previously connected the custom prevailed of giving him notice when the flues were to be sanded, and he knew of no custom to the contrary. Appellant's witnesses testified that on the trains with which they were connected such notice was not given, but that the brakemen thus exposed were expected to take care of themselves. Appellee's testimony as to his previous experience was undisputed. Under that state of the evidence the jury could not have found that the appellee, at the time he was injured, knew that the trainmen in charge of the engine would sand the flues without giving him notice. The only answer favorable to the appellant called for by the interrogatories would have been unwarranted by the evidence. If sanding flues without notice was, as found by the jury, a negligent act which might cause an injury, the injured brakeman did not assume that risk unless that method of operating trains was the one which had been commonly adopted, or a custom of which he had actual notice. There was no error, we think, in refusing to submit the requested issues.

[7-10] So far we have discussed the propriety of submitting the special issues requested upon the theory that the appellant was engaged in interstate commerce at the time this injury occurred. According to appellee's pleading this was an intrastate shipment by an intrastate carrier. The averments to the contrary in appellant's answer presented an issue of fact which appellant had the burden of proving. The only fact in evidence which tended to show an interstate transaction is that a train on which appellee was employed, going in an opposite direction about the time of the injury, carried a carload of potatoes which came from a point outside of this state. But that was not the train on which appellee was injured, according to his pleadings and his testimony; nor is there any other proof that he was injured on that train. If, as the record shows, appellant was engaged in intrastate commerce at the time this injury happened, its liability is governed by the laws of this state and the issue of assumed risk is not involved.

[11] In their brief counsel for appellee say the record shows that mention of attorney's fees was made during the deliberations of the jury. But the evidence shows that occurred after the jury had practically agreed upon the amount of damages. It was also shown by the testimony of the jurors that they all agreed to the lowest amount which had been suggested. No complaint is made that the verdict is excessive.

[12, 13] During the course of the trial counsel for appellant offered in evidence a copy of a contract made by the appellee in which he had assigned to G. W. Gibson, one of the attorneys representing him in the trial, a half interest in the subject-matter of the suit. Counsel for appellant thereupon asked the court to proceed no further because of a misjoinder of parties plaintiff. The record shows that this contract had been filed with the papers at the time plaintiff's original petition was filed, several months before the trial and before the appellant had filed any answer. No plea in abatement was interposed, and no objection made to proceeding to trial upon that ground, until at the stage of the trial above referred to. Before the case was finally disposed of in the court below Gibson filed an instrument in which he disclaimed any interest to any further liability on the part of the appellant by reason of that assignment, and agreed to abide by the judgment rendered in the case. It also appears that his name was signed to the pleadings of the plaintiff, and that he appeared actively in the prosecution of the case. Under those facts we think it conclusively appears that he was bound by the judgment rendered. If that be true, there was no error in the action of the court in continuing the trial to judgment.

The judgment will be affirmed.