### H. J. MILLER V. A. D. DYESS.

No. 7582. Decided March 19, 1941.
Rehearing overruled May 21, 1941.
Second Motion for rehearing overruled July 9, 1941.
(151 S. W., 2d Series, 186.)

136

*Robt. L. Sonfield* and *Abe Levy,* of Houston, for plaintiff in error.

It was error for the Court of Civil Appeals to reverse and render this cause, and not affirm the judgment of the lower court, for the reason that defendant Dyess acquired this title to the land involved herein subject to the lien which plaintiff sought to foreclose and did foreclose in the case of Miller v. Middleton, in the district court of Harris County, and afterwards appears as an attorney in said cause, having an interest in the subject matter of the litigation and had power to con-

duct and control the trial and shape the issues of the litigation, and was therefore bound by the judgment, the same as if he had been a formal party thereto. Griffin v. McFarlane, 96 S. W. (2d) 1000; Whitehouse Lbr. Co. v. Denny, 75 S. W. (2d) 709; City of Palestine v. City of Houston, 262 S. W. 215.

On the question that the death of one of the parties to the litigation is no abatement of the suit: Coe v. Nash, 91 Texas 113, 41 S. W. 473; Paddock v. Williamson, 9 S. W. (2d) 452; Houston Oil Co. v. Village Mills Co., 241 S. W. 122.

*A. D. Dyess* and *Chester H. Johnson,* of Houston, for defendants in error.

The judgment of the Court of Civil Appeals should be sustained, as a purchaser of the equity of redemption of a part of the mortgaged premises may force a redemption of the entire premises and be subrogated to the rights of the mortgagee only when the latter has failed to resort to the other parts of the premises for the satisfaction of the mortgage debts. Pine Bluff, M. & O. Ry. Co. v. James, 54 Ark. 81, 15 S. W. 15.

As H. J. Miller died before the case reached the Supreme Court, no application for writ of error has been filed by a party who was living at the time the same was filed, and therefore the application of the said Miller is a nullity and cannot be considered by the Court. Simmons v. Fisher, 46 Texas 130; Gibbs v. Belcher, 30 Texas 85; 3 Tex. Jur. 167, sec. 109.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is an action in trespass to try title. It was filed in the District Court of Brazoria County, Texas, by H. J. Miller against A. D. Dyess. Dyess is a duly licensed practicing attorney of this State and was such during all of the time involved in this litigation. This case was tried before the court without intervention of a jury and resulted in a judgment for the plaintiff, Miller. On appeal to the Court of Civil Appeals at Galveston, the judgment of the district court was reversed and judgment rendered for the defendant, Dyess. 126 S. W. (2d) 538. The case is before the Supreme Court on writ of error granted on application of Miller.

On December 10, 1928, H. J. Miller and wife, conveyed to A. H. Edling the 680 acres of land in Brazoria County, Texas,

here involved. As part consideration for such conveyance Edling and wife executed and delivered to H. J. Miller four vendor lien notes. The deed from the Millers to Edling was duly recorded in Brazoria County. Only two of the notes above mentioned are here involved. We presume the other two have been paid.

On April 30, 1931, A. H. Edling and wife conveyed this land to H. L. Middleton, Jr. H. L. Middleton, Jr., was trustee for his father, H. L. Middleton, Sr., who was the real owner. Middleton took title subject to two of the notes given to H. J. Miller in the principal sum of $1,700.00 each. These two notes were subsequently extended so as to mature December 10, 1933 and 1934, respectively.

On December 10, 1932, H. L. Middleton, Jr., executed a note for $300.00, payable to Harry Blackman. This note was secured by a deed of trust on this 680 acre tract of land. Of course such deed of trust was inferior to the lien securing the two $1,700.00 vendor lien notes held by Miller. Default was made in the payment of this $300.00 note and notices were posted for sale of this land under the deed of trust.

On September 27, 1934, during the supposed existence of the Moratorium Act passed by the Legislature of this State, and afterwards declared unconstitutional by this Court, an injunction suit was filed in the District Court of Brazoria County, Texas, by H. L. Middleton, Jr., and H. L. Middleton, Sr., as plaintiff against Harry Blackman and Abe Levy as defendants. A. D. Dyess, the defendant in error here, appeared as attorney of record for the Middletons in such moratorium suit and sought an injunction under such Moratorium Act delaying foreclosure. A. D. Dyess signed the petition as attorney for the Middletons in such suit. Such petition shows that Dyess had actual knowledge of the two $1,700.00 notes that were held by Miller because it appears that the petition of the Middletons, signed by Dyess, alleged that in addition to the $300.00 note directly involved in such suit that there was a first lien against this property in the principal sum of $3,400.00. Also such petition alleged that the taxes were delinquent for 1932-1933 and that the total indebtedness against this land then amounted to "not in excess of $4,500.00." On September 28, 1934, the next day after such injunction suit was field, a temporary injunction was granted enjoining the sale under the Blackman deed of trust until a certain time.

On September 27, 1934, the same day the above mentioned injunction suit was filed against Blackman and Levy, H. L. Middleton, Sr., executed and delivered to Dyess an instrument in writing. We copy this instrument, omitting description and formal parts.

"Whereas, I. H. L. Middleton of Matagorda County, Texas, am the owner of a tract of 680 acres of land in the John Cummings League, Abstract No. 57, Brazoria County, Texas, comprising a tract of 700 acres of land, less a tract of 20 acres, described as follows:

(Here follows description of this land).

"Whereas, I am indebted to Harry Blackman, of Harris County, Texas, in a sum of money secured by a deed of trust upon the above described tract of land, and the said Harry Blackman, through the trustee named in said deed of trust, Abe Levy, has prepared notices and claims to have posted notices of the sale of said property at trustee's sale in the town of Angleton, Brazoria County, Texas, on the first Tuesday in October, 1934, and

Whereas, I have employed A. D. Dyess, an attorney of Houston, Harris County, Texas, to bring such suit or suits in my behalf and in behalf of my son and trustee, H. L. Middleton, Jr., as may be necessary to protect said property from foreclosure as aforesaid, upon a contingency basis, and desire to evidence said contract of employment by this instrument in writing:

"Now, therefore, know all men by these presents:

"That in consideration of the services heretofore rendered and to be rendered by my said attorney, A. D. Dyess, I, H. L. Middleton, the legal and equitable owner of said 680 acres of land and of all minerals thereunder and of all mineral rights pertaining thereto, have and do hereby bargain, sell, transfer and assign unto my said attorney, A. D. Dyess, an undivided one-fourth part of all oil, gas and other minerals in and under and that may be produced from said tract of land, and it being understood that said land is not at this time covered by an oil, gas and mineral lease, but that I, H. L. Middleton, shall have the sale and executive right to lease said land upon such terms and conditions as I deem expedient, and reserving to me, as lessor, a minimum royalty of one-eighth part of all gas, oil and other minerals, that may be produced from said tract of

land, and that by reason of this assignment the said A. D. Dyess shall be entitled to receive a one-fourth (1/4) part of said one-eighth (1/8) royalty. He shall not be entitled, by reason thereof, to any part of the bonus which I may receive for the execution of any such oil, gas and mineral lease."

We here note that a t the time the above instrument was delivered to Dyess he knew, both actually and constructively, that Miller held the superior title to, and a vendor's lien against, this land. He also knew that Middleton had no defense to such Miller title and lien. This is shown by the petition signed by Dyess and filed in the moratorium suit against Blackman and Levy. Dyess also knew that his fee was contingent, and that he could not earn anything if this land was sold either under the deed of trust note or the vendor's lien note.

On January 29, 1935, Harry Blackman sold and transferred his $300.00 note and deed of trust lien, which was the subject matter of the moratorium suit above mentioned, to one Joseph L. Poutra.

On February 9, 1935, H. J. Miller filed suit in the District Court of Harris County, Texas, where his notes were payable, against H. L. Middleton, Sr., H. L. Middleton, Jr., and Joseph L. Poutra to recover on his two $1,700.00 notes, and foreclose his vendor's lien on this land. A plea of privilege was filed in this suit in Harris County by and on behalf of H. L. Mittleton, Sr. This plea of privilege was signed and sworn to by D. A. Dyess as Middleton's attorney. The affidavit to the above plea of privilege, signed and sworn to by Dyess, is as follows:

"Before me, the undersigned authority, on this day personally appeared A. D. Dyess, known to me, who being by me first duly sworn stated to me under oath that he is the attorney for defendant H. L. Middleton, Sr., in the above styled and numbered cause, and duly authorized to make this affidavit; that he is cognizant of all the facts stated in the above and foregoing plea of privilege, and that the above plea is true in substance and in fact."

The above affidavit signed and sworn to by Dyess and filed in the foreclosure suit in Harris County is a part of the pleading which identifies such suit. Such affidavit states that Dyess "is the attorney for the defendant, H. L. Middleton, Sr., in the above numbered and entitled cause, * * *." In such affidavit

Dyess made no attempt to say that he was the attorney with authority only to file the plea of privilege. To the contrary the affidavit states that Dyess is the attorney of H. L. Middleton, Sr., *"in the above numbered and entitled cause."* Certainly in this case Dyess is bound by the above statement. We will refer to this matter later.

On April 9, 1935, the above described foreclosure suit went to final judgment. Miller was awarded a recovery for $4,438.12 on his two vendor lien notes, with foreclosure of his lien on this land. Among other things such judgment recites:

"Be it remembered that on this the 9th day of April, A. D. 1935, came on to be heard the above entitled and numbered cause when the plaintiff, H. J. Miller appeared by his attorney and announced ready for trial, and the defendants, H. L. Middleton, Jr., H. L. Middleton, Sr., and Joseph L. Poutra, having been duly and legally served with citation herein for the length of time and the manner required by law, the defendants, H. L. Middleton, Jr., and H. L. Middleton, Sr., having heretofore filed answers herein and the defendant Joseph L. Poutra wholly made default, and this cause having been regularly set down for trial on this date, and the defendants H. L. Middleton, Jr., and H. L. Middleton, Sr., appearing by their attorney and announced ready for trial, and a jury having been waived, all matters of fact as well as law were submitted to the Court, and the Court having heard the pleadings, and the evidence and being fully advised in the premises finds for the plaintiff, H. J. Miller, that the defendant, H. L. Middleton, Jr., is indebted to the Plaintiff in the sum of Four Thousand Four Hundred Thirty Eight and 12/100 ($4,438.12) Dollars and that the plaintiff is entitled to a foreclosure of his Vendor's Lien against all of said defendants as to the land and premises hereinafter described to secure the payment of this judgment."

In the trial of the case at bar against Dyess, he, Dyess, appeared as his own attorney and conducted this trial in his own behalf in all of its details. The above judgment in the foreclosure suit, the affidavit made and filed by Dyess in regard to his having been attorney for Middleton in such suit, and the balance of the record above detailed were offered in evidence in the trial of this case in the presence and hearing of Dyess. Dyess remained silent throughout this trial. He never offered himself as a witness. He never attempted to deny or explain any of the facts or circumstances above detailed. We here pause

to note further that the evidence in this record shows that Middleton never employed any attorney other than Dyess to appear in the foreclosure suit.

Subsequent to the judgment in the foreclosure suit of Miller against the Middletons and Poutra, order of sale was issued thereon and the land here involved was duly levied upon, and sold by the sheriff of Brazoria County, Texas, to H. L. Miller. Sheriff's deed was duly executed and delivered to Miller and duly recorded in Brazoria County.

At the time the foreclosure suit of Miller v. Middleton et al was filed and tried in the District Court of Harris County, Texas, the instrument from Middleton, Sr., to Dyess was of record on the deed records of Brazoria County. Miller was therefore charged with notice thereof.

As we understand this record Dyess is claiming that, since he was not made a party to the foreclosure suit in Harris County, he is not bound by the judgment therein, and therefore has the equitable right to redeem this land both for himself and the Middletons. Dyess claims in the alternative that in the event he does not have the right to redeem both for himself and the Middletons, he has the right to redeem as to his interest therein. As we interpret the judgment of the Court of Civil Appeals it accords to Dyess the right to redeem the entire title;—that is, to redeem for the Middletons as well as for himself.

After the sale of this land under the foreclosure suit in Harris County, Dyess was claiming as above indicated, and Miller filed the present suit to recover this land from Dyess, and to clear his title. We will not attempt to detail the pleadings, but will assume that those of both parties are sufficient to present the questions of law which we shall decide. We here pause to note that Miller contends in this case that Dyess is bound by the judgment in the foreclosure suit of Miller against the Middletons to the same extent as though he had been named and served as a party therein.

In addition to the facts above set out Dyess, in the trial of this case, placed H. L. Middleton, Sr., on the stand as a witness. Such witness, among other things, testified in substance: "That he employed Dyess to represent him in his efforts to save this property from the liens that were on it; that he had no

other lawyer; that he employed Dyess to represent him and gave him a deed to an undivided one-fourth of the minerals in this property; that that was the consideration for his conveyance to Dyess; that he knew he was sued in the foreclosure suit in Harris County, but had given up hope and didn't know what Dyess did; that he had confidence in Dyess and left it up to him. When asked by counsel for Miller if he employed any other lawyer to represent him in the foreclosure suit he, Middleton, Sr., answered: "Nobody but him," referring to Dyess.

Under the above record we think there is abundant evidence, direct and circumstantial, to sustain the finding of the trial court, express and implied, that Dyess was employed by Middleton to represent him in the foreclosure suit of Miller against the Middletons and Poutra and that Dyess did appear as such attorney in such suit and conduct the trial thereof. In this connection this record shows: That Middleton owned this land with two liens on it; that such liens were past due; that the Middletons were unable to pay such liens; that the Middletons were not questioning the validity of such liens; that the Middletons had no valid defense against such liens; that at the time of Dyess's employment as attorney for the Middletons, he knew these facts; that at the time of such employment foreclosure proceedings had begun as to the Blackman lien; that Dyess was employed to prevent or delay such foreclosure; that Dyess was conveyed an interest in this land for his services as attorney with the right "to bring such suit or suits in my behalf, and in behalf of my son and trustee, H. L. Middleton, Jr., as may be necessary to protect said property from foreclosure as aforesaid, upon a contingency basis * * *;" that Dyess filed a suit under the moratorium law acting under the above contract of employment; that still acting under such contract Dyess appeared in the foreclosure suit as attorney for the Middletons, and that the conveyance to Dyess was in the nature of a contingent fee in this land to save it from the foreclosure under all liens against it.

We think that when all of the above evidence is considered in connection with the fact that, when in the trial of this case, Dyess was confronted with such facts he remained silent and offered no denial or explanation, the trial court was amply justified in concluding that Dyess appeared in the foreclosure suit for the Middletons. We think further that the trial court was justified in concluding that Dyess was the Middletons' only attorney in such suit.

As applied to the facts of this case, we think the following is the rule of law which governs its decision:

1 Where an attorney who holds a contingent interest in the subject-matter of litigation, conveyed to him by one or more of the litigants as a fee to represent them in such litigation, appears in the trial of such litigation as the attorney for such client or clients, and conducts the trial, such attorney is bound by the judgment entered, just as effectively and just as completely, as he would have been bound had he been actually named a party in such judgment. Houston Oil Co. of Texas v. Village Mills Co. (Com. App.), 241 S. W. 122; Hauke v. Cooper, 108 Fed. 292, 48 C. C. A. 144; City of Palestine v. City of Houston (Civ. App.), 262 S. W. 215; Whitehouse Lumber Co. v. Denny (Civ. App., writ refused), 75 S. W. (2d) 709; Johnson v. Bingham (Com. App.), 265 S. W. 130; Cavers v. Sioux Oil & Refining Co. (Com. App.), 39 S. W. (2d) 862; Bomar v. Ft. Worth Bldg. Ass'n, 49 S. W. 914; Harwood v. West Lumber Co., 248 Fed. 123, 160 C. C. A. 263; American Cotton Co. v. Simmons (Civ. App., writ refused), 87 S. W. 842; Estey & Camp v. Luther (Civ. App., writ refused), 142 S. W. 649; Perkins v. Terrell (Civ. App., writ refused), 214 S. W. 551; Texas & N. O. Ry. Co. v. Tilley (Civ. App., writ refused), 297 S. W. 1063; 15 R. C. L., p. 1009, sec. 483. These authorities could be greatly extended, but they are sufficient to sustain the rule above announced.

2 Dyess earnestly insists that this record will not sustain a finding that Middleton employed him to represent him in the foreclosure suit in Harris County. In this connection, Dyess contends that his contract with Middleton is defined in the written instrument from Middleton to him. We are of the opinion that the written instrument is sufficient to justify Dyess' appearance in the foreclosure suit in the role of attorney for the defendant. It is true that such instrument says that Dyess was employed "to bring such suit, or suits, on my behalf," etc., but when the whole contract is looked to, we think it is evident that it was not intended that the employment should be confined exclusively to appearing as a plaintiff. Dyess was employed to delay foreclosure. He could discharge this employment by appearing as a plaintiff in the moratorium suit, but he had to appear as a defendant in the foreclosure suit. To say the lease, Dyess evidently construed his contract with Middleton as giving him the right to appear for the defendant in the foreclosure suit. This must be true, for he did actually appear

therein as Middleton's attorney; and having done so, he is no position to say in this, his own suit, that he acted without authority.

3  Reverting to the evidence in this case, with reference to Dyess' appearance in the foreclosure suit, we again call attention to the fact that the circumstances tending to show that he did appear in such suit were offered in evidence in this case in his presence and hearing. The judgment reciting that the Middletons appeared by their attorney was offered. The affidavit, signed and sworn to by Dyess, stating that he was Middleton's attorney in such suit, was offered. Dyess was present conducting his own case, but sat silent and offered no denial or explanation. We think that the trial court had a right to view such silence as a strong circumstance against Dyess. 22 C. J., p. 321, sec. 356. We quote the following from this authority:

"A statement which, although made in the presence of a party, is not connected with his conduct at the time when it was made, is mere hearsay and not evidence against him of any fact narrated therein. But where a definite statement of a matter of fact, affecting a party or his rights, is made in his presence or hearing so that he understands it, and the statement is of such a nature as to call for a reply, the statement, in connection with a total or partial failure to reply, is admissible as tending to show a concession of the truth of the facts stated."

The judgment of the Court of Civil Appeals is reversed, and the judgment of the district court affirmed.

Opinion delivered March 19, 1941.

### ON REHEARING.

This case is before us on motions to dismiss and for rehearing. We will first consider the motion to dismiss.

This cause was filed in the District Court of Brazoria County, as an action in trespass to try title, by H. J. Miller against A. D. Dyess. Trial in the district court resulted in a judgment for H. J. Miller. Dyess appealed to the Court of Civil Appeals at Galveston. On March 8, 1939, the Court of Civil Appeals rendered its opinion and judgment, reversing the judgment of the district court and rendering judgment for

Dyess. On March 30, 1939, the Court of Civil Appeals overruled motion for rehearing filed in the name of H. J. Miller.

On April 20, 1939, after the Court of Civil Appeals had overruled the motion for rehearing filed in that court in the name of H. J. Miller, Mrs. Martha Miller, surviving widow of H. J. Miller, filed in that court an instrument in writing, which made known to the court the fact that H. J. Miller was dead; that he died on September 10, 1938; that he left a written will; that said will had been duly probated; that Mrs. Martha Miller was named as independent executrix of said will; that she had duly qualified as such; and that under the terms of said will she was bequeathed the fee simple title to the 680 acres of land involved in this suit. Such instrument in writing contains a prayer, as follows:

"WHEREFORE, your petitioner, Mrs. Martha Miller, prays this honorable court that if it should be necessary and required for her to be substituted for her deceased husband, H. J. Miller, and that this cause be further prosecuted by her in her capacity as independent executrix, that she be so substituted by proper order of the court; that if said substitution be not necessary, then this petition be treated as notice to this honorable court of the death of the said H. J. Miller; that your petitioner have such orders to which she may be justly entitled in order that this said cause be prosceuted to the Supreme Court of Texas, and that application for writ of error may be filed herein."

No action was taken by the Court of Civil Appeals on the above instrument or motion.

On April 25, 1939, the application to the Supreme Court for writ of error was filed in the Court of Civil Appeals. This application on its face purports to be made in the name of H. J. Miller. As already shown, H. J. Miller was dead at the time such application was filed.

On April 29, 1939, writ of error bond was duly filed. This bond recites the salient facts above detailed, with reference to the death of H. J. Miller, etc., and is otherwise in due form. It is signed by Mrs. Martha Miller, "Surviving widow of H. J. Miller, deceased, the plaintiff in error, and independent executrix of his estate." On May 17, 1939, this Court granted such application, and on March 19, 1941, this Court rendered its

opinion and judgment, reversing the judgment 'of the Court of Civil Appeals and affirming the judgment of the district court.

Since the happening of the above events, A. D. Dyess, has filed in this Court a motion styled: "Motion of A. D. Dyess, defendant in error, that this cause be dismissed for want of jurisdiction and that the opinion heretofore written and filed be stricken." We presume that Dyess intends this motion as one to dismiss the writ of error, not to dismiss the cause. We shall treat it as a motion to dismiss the writ of error.

By the above motion A. D. Dyess contends that the application for writ of error to the Supreme Court was and is a nullity, because made in the name and on behalf of a person who was dead at the time it was filed in the Court of Civil Appeals. It is then contended that since the application to this Court for writ of error was and is a nullity, it failed to invoke jurisdiction. Stated in another way, it is contended that since the application to this Court was and is a nullity, this Court obtained no jurisdiction over this cause, and therefore had and has no jurisdiction to review the judgments of the two lower courts. Before proceeding further we deem it advisable to quote Article 1850 and 1760, R. C. S. 1925:

"Art. 1850. Death does not abate.—If any party to the record in a cause pending in a Court of Civil Appeals shall die after the appeal bond is filed and approved or after the writ of error has been served, and before the cause has been decided, such cause shall not abate, but the court shall proceed to adjudicate the case and render judgment therein as if all parties thereto were still living. Such judgment shall have the same force and effect as if rendered in the lifetime of all the parties thereto."

"Art. 1760. Death of parties no abatement.—If any party to the record in a cause pending in the Supreme Court dies after the writ of error has been served and before such cause has been decided by the Supreme Court, such cause shall not abate by such death; but the court shall proceed to adjudicate such cause and render judgment therein as if all the parties thereto were living, and such judgment shall have the same force and effect as if rendered in the liftime of all the parties thereto."

4 A reading of Article 1850, supra, will disclose that under its provisions, where a party to the record dies after the jurisdiction of the Court of Civil Appeals has attached, and before

the cause is finally disposed of, such cause does not abate, but the court is given power or jurisdiction to proceed to render final judgment, just as if all parties to such appeal were still living. In the case at bar, H. J. Miller was still living when the jurisdiction of the Court of Civil Appeals attached to this case. He died while the case was pending in that court. Under the plain provisions of the above statute, the Court of Civil Appeals had full power to proceed to final judgment, just as though Miller were still living. Conn v. Hagan, 93 Texas 334, 55 S. W. 323; White v. Manning, 102 S. W. 1163.

A reading of Article 1760, supra, will disclose that it provides, in effect, that where a party to a cause dies after the jurisdiction of the Supreme Court has attached in such cause, and while such cause is still pending in such court, the court can proceed to final judgment, just as if all parties to such cause were still living. Simply stated, this Article seems to accord to the Supreme Court the same power as is accorded to the Court of Civil Appeals under Article 1850, supra, with reference to parties who may die. Both articles seem to deal with cases where jurisdiction has attached prior to the death of such parties.

In the case at bar it is contended that the Court of Civil Appeals exhaused its jurisdiction when it proceeded to final judgment under authority of Article 1850. We agree with such contention. Dyess then contends that Article 1760 cannot have any application to this case, because H. J. Miller did not die after the jurisdiction of the Supreme Court had attached. We think there is no escape from sustaining such contention. H. J. Miller died while the case was still pending and wholly undecided in the Court of Civil Appeals. He did not die after the jurisdiction of the Supreme Court had attached.

5 In spite of what we have said, we think the jurisdiction of the Supreme Court attached in this case. As already shown, after the Court of Civil Appeals had entered its final judgment, and after that court had overruled motion for rehearing, Mrs. Miller filed in this cause the instrument in writing above described. Such instrument was filed in the Court of Civil Appeals and in this Court. It shows upon its face that it was filed in order to acquaint either court interested with the fact that H. J. Miller was dead, and that he had died while the jurisdiction of the Court of Civil Appeals was in force. It further shows that it was filed to be considered by this Court along with the

application for writ of error, "in order that said cause be prosecuted to the Supreme Court of Texas, and that application for writ of error may be filed herein." We think that the application for writ of error should be considered along with the above-described instrument, and that the two instruments should be considered together in considering the sufficiency of the application for the writ. When this is done, it is evident that the writ of error was prosecuted to this Court by Mrs. Martha Miller as independent executrix under the will of H. J. Miller, deceased, and as the owner of the land here involved under the will of H. J. Miller, deceased.

At this point we note that the above motion to dismiss was not filed until after this Court had considered this cause on its merits and entered opinion and judgment herein. In passing on the merits of such motion we do not hold that it was timely filed. We do not pass on that question. It is not necessary.

The motion to dismiss is in all things overruled.

We also have before us motion for rehearing, filed by A. D. Dyess, defendant in error in this Court. After a careful consideration of such motion, we still adhere to the views expressed in our original opinion. The motion is therefore in all things overruled.

Opinion delivered May 21, 1941.

Second motion for rehearing overruled July 9, 1941.