L. A. MUSE, Appellant,

v.

Bobby McWILLIAMS, Appellee.

No. 6618.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 22, 1956.

Rehearing Denied Nov. 13, 1956.

Porter & Lowe, Clarendon, for appellant.

John B. Stapleton, Floydada, Ratliff, Conner & Walker, Spur, for appellee.

MARTIN, Justice.

In response to appellee's motion for rehearing and motion to dismiss the appeal, the original opinion of this court has been withdrawn and incorporated into the following opinion which serves both as the original opinion of this court and also as the court's ruling on appellee's motion for rehearing and motion to dismiss the appeal.

Appellee has urged before this court that the judgment of the trial court was not final in that it did not dispose of appellee's cross-action as filed by appellee as defendant in the trial court. As to such defendant the judgment provided that the plaintiff take nothing by his suit "and that the defendant go hence with his cost without day and that execution issue in his behalf for his said costs." In the defense of the cause of action adjudicated by the decree of the trial court, the appellee did not press his cross-action but merely sought to show that he was not liable to the appellant by reason of the appellant's contributory negligence in the cause. The appellee did not introduce a scintilla of evidence that either he or his truck was damaged in the slightest manner. The judgment of the trial court disposed of appellee's alleged cross-action in the language quoted above as the record clearly reflects that the appellee wholly abandoned his cross-action without any attempt to prove that he was damaged in any way. Further, the judgment of the trial court must be regarded as expressing the action of such court as revealed by the choice of language therein. The term "without day", as revealed by Vol. 2, Bouver's Law Dictionary, Rawles Third Day, page 3474, expresses the following:

"Without Day. This signifies that the cause or thing to which it relates is indefinitely adjourned; as, when a case is adjourned without day it is not again to be inquired into."

The language of the judgment, therefore, clearly reveals a final disposition of any action by appellee. Further, since appellee had clearly abandoned his cross-action, the only relief the trial court could grant him was the recovery of his costs. Appellee's cross-action was disposed of not only by the express language used in the trial court's judgment but also by clear and necessary implication. Laros v. Hartman, 152 Tex. 518, 260 S.W.2d 592; Tennison v. Donegan, Tex.Com.App., 237 S.W. 229; Prim v. Latham, Tex.Civ.App., 6 S.W.2d 173, writ refused; Bennet v. Copeland, 149 Tex. 474, 235 S.W.2d 605; Burton Lingo Co. v. First Baptist Church of Abilene, Tex.Com.App., 222 S.W. 203. Appellant's motion to dismiss the appeal is overruled.

Appellant, L. A. Muse, while driving his 1954 Dodge pickup in an easterly direction on State Highway No. 256 collided with a truck driven by appellee, Bobby McWilliams. This truck was driven from an intersecting dirt road onto the paved State Highway. The case was tried without a jury before Judge Alton B. Chapman who rendered judgment that appellant take nothing by his cause of action and that appellee recover his costs.

The appellant's one point of error presents the issue that the judgment of trial court is contrary to the law and to the evidence in the cause. The appellee under one counterpoint asserts there is competent evidence to support the judgment of the trial court and such judgment should be sustained.

Appellant's testimony, which testimony is uncontroverted, reveals that he was traveling on State Highway No. 256 in his red Dodge pickup at a speed not to exceed forty-five miles per hour. All parties admit that appellant was driving his pickup upon a paved state highway. All parties likewise admit that appellee while operating a truck approached this state highway from the north on a dirt road intersecting the state highway. It is likewise shown by the undisputed evidence, and also admitted by the appellee, that there was a stop sign facing appellee on the dirt road which intersected the state highway. The time of the collision was about noon on a clear day and visibility was good. Appellee testified that he looked both to the east and to the west before proceeding upon the paved highway and that his view was unobstructed for one-fourth of a mile each way. Appellee testified he did not see the approaching red pickup of the appellant until he heard the brakes screeching on the pickup immediately prior to the collision. It is likewise uncontroverted that appellant's pickup was on appellant's right hand side of the highway and that the pickup never at any time crossed over the center stripe of the highway. All the evidence establishes that the collision occurred between the pickup and truck on appellant's right hand side of the highway. Two other elements as discussed in detail hereinafter complete the record under which the validity of the trial court's judgment must be determined.

Appellant testified that he observed the appellee approaching the highway intersection along the dirt road and that appellant proceeded along the state highway in his truck in the belief that appellee, who began reducing the speed of the truck, was going to stop at the stop sign at the intersection. Appellant further testified that appellee never stopped at the stop sign at the intersection but drove out onto the paved highway in front of him and thereby caused the collision. Appellant also testified that appellee told the sheriff of the county that he, the appellee, did not stop at the stop sign and was fully at fault as to the wreck. The sheriff was not called as a witness by appellee to refute this testimony by appellant and appellee admitted that he stated the wreck was his fault. Appellant further testified, without such testimony being disputed, that he sounded the pickup's horn just prior to the collision. Mrs. Artie May, a disinterested witness, testified that in her presence and in the presence of witnesses the appellee stated that he looked and did not see anybody and did not stop and went on across the highway. This fact was further borne out by the testimony of Mrs. Lee Muse, the wife of appellant, and also by Fred King, a witness with no financial interest in the cause.

The appellee's brief on motion for rehearing, beginning at the bottom of Page 3 thereof and continuing through Pages 4 and 5, alleges that this court incorrectly construed the evidence hereinafter discussed and ruled upon. This matter was only briefly discussed in the original opinion but was believed to be a clear exposition of the matter therein treated. Since appellee questions the court's construction of the evidence in issue, the matter will be treated in detail. As pointed out by appellee in his brief, the testimony in issue

is one of the controlling elements in the cause. As pointed out by appellee, his counsel propounded the following question to him as revealed on Page 66 of the Statement of Facts:

"Q. Now, then, Mr. Muse has and *some of his other people here* have *said* that *you told him* that *it was all your fault.*"

It is further pointed out in appellee's own brief on his motion for rehearing, that the parties referred to in the above question as "some of his other people" *never at any time testified that the appellee told Muse* that the collision *was all appellee's fault.* (Emphasis added.) This undisputed fact is admitted at the bottom of Page 1 and top of Page 2 of appellee's brief on his motion for rehearing. The uncontroverted record discloses conclusively that the "other people" as referred to were Mrs. Artie May, Mrs. Lee Muse, and Fred King. The undisputed record further discloses that such witnesses testified to the following admission only as made by appellee at the place of collision:

"* * * this young fellow *said* he didn't see Lee and *that he didn't stop;* said he looked and he didn't see anybody come and he went on across." (Italics added.)

From such testimony, quoted from Page 46 of the record and stated to be correct in appellee's brief, it is apparent beyond dispute that appellee's own counsel in stating to the appellee that "some of his other people here have said that you told him (Lee Muse) it was all your fault" was phrasing the question quoted hereinabove on purported evidence that is not found in the record. It is also readily apparent that such counsel's inquiry as propounded to appellee had for its purpose the refuting of the testimony of the "other people." The subject that counsel was seeking to have his client expound upon to the court is conclusively one with reference to the statement by Muse and three other people that appellee had

said at the scene of the collision that he, the appellee, did not stop before entering the intersection. The mere fact that counsel incorrectly stated the record as to what the "other people" testified to cannot serve to divert attention from the real issue on which appellee was asked to give his version to the court. In response to the above quoted direct interrogation, such counsel received the following reply from appellee:

"A. Well,—"

Thereupon appellee's counsel directed appellee:

"Q. Just tell the judge what you said about it."

Clearly the antecedent of "it" was what Muse and "some of his other people here have said" and such witnesses had testified that appellee said "that he didn't stop." Such "other people" never at any time stated or testified that appellee stated to Muse that he (appellee) was at fault. In answer to the direction above the appellee replied:

"A. *Well, I did.* I was scared to death and I did tell Mr. Muse that I would pay for getting his pickup fixed. Well, I found out that the insurance company paid him off and got to talking to J. W. Lyons (attorney) up here in Silverton and he got to thinking maybe it wasn't my fault and I talked to John (appellee's attorney) here and so we decided maybe I was in the right." (Emphasis added.)

It is clear that the sole subject of the inquiry then before the court was appellee's version of whether or not he stated at the scene of the collision that he did not stop. Appellee's statement "Well, I did," in the face of the record, can only mean that appellee admitted in the trial of the cause that he did not stop as was testified to by Muse and "his other people." It is worthy of note that even after appellee had consulted with two attorneys, they had not come to any more definite decision as to

appellee's position than "*maybe* that I was in the right." (Italics added.)

With reference to the matter discussed in detail above, appellee's attorney's point out that the trial court took over the presentation of appellee's evidence and that under examination by the court the appellee denied that he stated at the scene of the collision that he did not stop. However, appellee's denial under examination by the court that he did not tell the people at the collision that he did not stop does not constitute a denial of appellee's sworn testimony shown hereinabove as made in the trial of the cause. In this connection, it must be further pointed out that the trial court likewise misquoted the record in seeking to extricate the appellee from his statement as made at the scene of the collision:

"The Court. Bobby, let me ask you a question or two. These lawyers have put the court in an unenviable position of having to pass on the facts here. Now, *you heard* what *these two ladies said that you said that it was your fault*, that you didn't stop— A. Well, I didn't say—I just told them that I looked and didn't see anybody that it was—then I said it was my fault, but I didn't tell them that I didn't stop." (Italics added.)

The appellee, though a party to the trial, could not have heard the court's purported statement from the record "these two ladies said that *you said that it was your fault*" as such testimony is not found in this record. (Emphasis added.) It is further observed that the court continued the examination of the appellee as follows:

"The Court: Well, I am more interested in whether you did or didn't stop than what you said. Now did you or did you not stop? A. I stopped; yes, sir."

This testimony as introduced by the court has no reference whatever to the fact that appellee by his sworn testimony, "Well, I did", admitted in the trial of the cause by

such judicial admission that he stated at the time of the collision that he did not stop. The mere fact that the appellee denied that he made the statement at the scene of the collision that he did not stop and denied that he failed to stop will not set aside appellee's own binding judicial admission made on the trial of the cause that he did state in the presence of two ladies at the scene of the collision that he did not stop. The two ladies to which the court referred were Mrs. Artie May and Mrs. Muse and the record nowhere bears out the statement of either appellee's counsel or of the court that such ladies testified that appellee said at the scene of the collision that such collision was appellee's fault.

■ The statement by appellee under oath in the trial of the cause: "Well, I did" was a judicial admission and it was binding on him. Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 145 S.W.2d 569, Syl. 1. In the light of this cited decision it must be observed that appellee's testimony did not reveal that his prior judicial admission was "subsequently modified or explained by him so that to show that he was mistaken." Appellee's testimony went no further than seeking to deny that he made the statement at the scene of the collision that he did not stop. The record, as hereinabove discussed, reveals that appellee made a judicial admission under oath in the trial of the cause that he did admit to Mrs. May, to Mrs. Muse and to Fred King that he did not stop. As to such an admission, it was ruled in Southern Surety Co. v. Inabnit, Tex.Civ.App., 1 S.W.2d 412, 415 [8]:

"The testimony of a party to a suit and admissions made by him must be construed as binding upon him, and not merely as raising issues of fact. His testimony is governed by different rules to those governing witnesses who are not parties."

Stephenson v. Barrow, Tex.Com.App., 15 S.W.2d 575; Texas & P. Ry. Co. v. Wood, 145 Tex. 534, 199 S.W.2d 652, Syl. 3–4,

citing and quoting the above rule from Southern Surety Co. v. Inabnit, supra.

Evidence further substantiating the fact that appellee did make the admission that he did not stop at the scene of the collision and further substantiating appellee's judicial admission made during the trial of the cause as hereinabove discussed, is the undisputed fact that appellee never at any time, either during the trial of the cause or on any other occasion, denied that he admitted to the witnesses above named and to appellant that he was wholly at fault as to the collision. It is an undisputed fact that appellee by his own judicial admission in the trial of the cause established that he did not stop at the stop sign and so admitted it at the scene of the collision to four witnesses.

■ The court's opinion here is not based upon the fact that the trial court's implied finding on the above issue is against the great weight and preponderance of the evidence. The record above reveals, under applicable law, that there is no evidence of probative force to support the trial court's implied finding that appellee did not fail to stop at the stop sign and did not admit that he failed to stop. The trial court evidently did not consider appellee's judicial admission as he made no attempt to refute it in examining appellee as a witness. The undisputed record further reveals the following testimony by appellee:

"Q. Now, after the sheriff came out there, I will ask you whether or not you told the sheriff that you didn't stop? A. I didn't, Mr. Muse told him that I didn't stop and I didn't tell the sheriff nothing."

This was appellee's testimony on direct examination by his own counsel. Appellee further testified on cross-examination that he heard Mr. Muse's statement to the sheriff that appellee did not stop at the stop sign. In the face of such statement of fact, appellee not only admitted that he did not say anything but testified that he

did not object to Lee Muse making such statements to the sheriff. These statements made by appellant to the sheriff of the county in appellee's presence when appellee remained silent further established the fact that appellee did not stop at the stop sign and so admitted at the scene of the collision.

"On the other hand, provided the requirements discussed in §295 infra are present [such elements are present here], where a definite statement of a matter of fact, affecting a party or his rights, is made, the statement, although inadmissible as evidence of the facts stated, is, in connection with a total or partial failure to reply, admissible as tending to show a concession of the truth of the facts stated, according to the decisions on the question to the same extent as an express admission. * * *" 31 C.J.S., Evidence, §294, p. 1058.

Also see 17 Tex.Jur., Evidence, Sec. 235, p. 568; Miller v. Dyess, 137 Tex. 135, 151 S.W.2d 186, Syl. 7, 137 A.L.R. 578; Traders & General Ins. Co. v. Russell, Tex. Civ.App., 99 S.W.2d 1079, Syl. 2; Martin v. City of Corsicana, Tex.Civ.App., 130 S.W.2d 405, Syl. 6.

It is apparent under the record before this court, and the law applicable thereto, that the evidence that appellee did not stop at the stop sign and admitted such fact at the time of the collision as well as by his testimony on the trial of the cause is not only uncontroverted but such fact was conceded by appellee, as a matter of law, by his actions and conduct at the scene of the collision in addition to his sworn testimony given in the trial of the cause. There is no evidence to support a finding by the trial court that appellee stopped at the stop sign or that appellee at the scene of the collision did not admit failing to stop at the stop sign.

A second element as to the judgment of the trial court will be briefly discussed.

Appellee admitted that he drove onto the state highway without seeing the approaching pickup of the appellant or even.knowing of its presence until he heard the screeching of the pickup brakes. He recognized in the trial of the cause that such fact was an admission establishing his liability. Appellee stated at the time of the collision, and also testified in the trial of the case, that he made the admission that the collision was all his fault and that he agreed to repair appellant's pickup. His testimony, "Well, I did" was a judicial admission that he told Mrs. May, Mrs. Muse and Mr. King that he did not stop. The undisputed record reveals that appellant was traveling at a lawful rate of speed not to exceed forty-five miles per hour on a state highway. While appellee was approaching the intersection, the appellant was to appellee's right and had the right-of-way at the intersection. When appellant observed appellee was going onto the highway without stopping at the stop sign, appellant not only sounded the horn on his pickup to warn appellee but also applied the brakes on the pickup and did everything he could to avoid the collision. In connection with this issue, it should be observed that mere estimates made by appellee and his witnesses as to the distance within which appellant applied the brakes will not controvert the positive testimony of appellee as to the exact distance as established by measurement. The mere estimates of such distance by appellee and by his witness are all contrary to the actual measurements of such distance as proven in the trial of the cause. In the light of these undisputed facts, the only theory under which appellee sought to justify his failure to see appellant's bright red pickup approaching the intersection on a level highway, was that some time after the collision occurred appellee and his witness observed a mirage about one-fourth of a mile or more away and on the highway in the direction from which appellant had approached the intersection. This theory cannot serve to substantiate the trial court's judgment or any implied findings of fact under the following testimony and admission of the appellee:

"Q. And consequently you couldn't testify whether or not there was a mirage at this place in question at the time of the collision? A. No, sir."

The appellant correctly cites Kersey v. Swidler, Tex.Civ.App., 223 S.W.2d 242, as supporting his cause of action under the facts in this cause. He likewise cites as authority for his position Evans v. Rush, Tex.Civ.App., 254 S.W.2d 799 as written by Chief Justice Pitts. To these citations might be added the further opinion of Dallas Railway & Terminal Co. v. Straughan, Tex.Civ.App., 254 S.W.2d 882, as written by Chief Justice Pitts of this court. These authorities support the position of the appellant in this cause. Appellant, while driving down the state highway, was not required under the law to assume that the appellee would violate the law and drive his truck past a stop sign and into the highway intersection without stopping. Minugh v. Royal Crown Bottling Co., Tex. Civ.App., 267 S.W.2d 861, Syl. 3 (writ refused); Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063, Syl. 4.

The judgment of the trial court for appellee is without any fact or law to sustain the same. Appellee's motion to dismiss the appeal and for a rehearing of the cause are denied. The undisputed record supports appellant's cause of action as to liability of the appellee and the judgment of the trial court is reversed and the cause is remanded.