Gilbert *vs.* Thomas et al.

No. 74.—THOMAS GILBERT, plaintiff in error, *vs.* JAMES THOMAS et al., defendants in error.

[1.] Equity cases are not embraced in the term "*civil cases*," as used in sec. 1, art, 3, of the constitution of 1798.

[2.] The creditors of D. G., deceased, filed their bill in the Superior Court of Hancock county, against R., as *administrator de bonis non, cum testamento annexo* of said deceased; R. had none of the assets of the estate in his hands, neither was there any allegation of *non-feasance* or *mal-feasance;* H., the removed executor, and T. G., both of the county of Stewart, were made co-defendants, and were charged to have colluded together for the purpose of defrauding the estate while under the management of said executor : *held,* that the bill was properly demurrable for want of privity between the parties, and also on account of the misjoinder of the defendants.

In Equity.    Bill and demurrer.    From Hancock Superior Court.    Before Judge SAYRE.    October Term, 1847.

The bill in this case alleged, that Darius Gilbert, of the county of Hancock, departed this life, leaving a will, and having appointed Thomas Gilbert and William M. Hardwick his executors; that

Hardwick alone qualified, and was finally removed from the trust on account of an alleged waste and mismanagement, and Henry Rogers was appointed *administrator de. bonis non, cum testamento annexo.* That the creditors of Darius Gilbert filed their bill in equity in the Superior court of the county of Hancock against said Rogers as such *administrator de bonis non,* &c., Hardwick, the removed executor, and Thomas Gilbert, who was charged in the bill with having colluded with Hardwick in the fraudulent waste and mismanagement of the estate while in his (Hardwick's) hands.

The bill stated that the creditors did not know how much of the assets had gone into the hands of Rogers, but charged that most of them were in the hands of Hardwick or Gilbert. It was not charged or alleged directly, that any of the assets had. been received by Rogers, or that he was insolvent, or unwilling to discharge his duty in collecting in the assets for the purpose of being administered, or that he was in any wise connected with the alleged fraud between the other two defendants.

Rogers was the only defendant to the bill who resided in the county of Hancock ; the other two, Hardwick and Gilbert, resided in Stewart county.

The bill concluded with a prayer for an account, &c.

At the October Term, 1847, of the Court below, Judge Sayre presiding, Gilbert demurred to the bill on the following grounds :

1. *Because* the complainants had an adequate remedy at law.

2. *Because* the bill was multifarious ;

3. *Because* there was no equity in the bill ;

4. *Because* there was no privity, as between Gilbert and the complainants ;

5. *Because* the claims of the complainants are barred by the Statute of limitations.

The demurrer was overruled, and the counsel for Gilbert excepted and assigned for error in the judgment below, the grounds of the demurrer.

ELI H. BAXTER and HENRY L. BENNING, for the plaintiff in error.

JOHNSTON & THOMAS, for the defendants in error.

Mr. Baxter submitted the following brief of points and authorities, relied on in behalf of the plaintiff in error :

The complainants below have a complete and adequate remedy at law. *Story Eq. Pl. sec.* 473 ; *Mitford* 123 ; *Cooper Eq. Pl.* 124.

The bill is multifarious. *Story Eq. Pl. sec.* 271, *note ; ib. sec.* 275 ; *Whaley* vs. *Dawson*, 2 *Sch. & Lefr.* 367, 370, 371 ; *Story Eq. Pl. sec.* 530, *note, p.* 305; *Pearce* vs. *Hewitt,* 7 *Sim. R.* 471 ; *Butler and others* vs. *Durham*, 2 *Kelly R.* 419 ; *Saxton* vs. *Davis*, 18 *Vesey R.* 80 ; *Salvidge* vs. *Hyde*, 1 *Jacobs R.* 151 ; 4 *Cowen R.* 151.

There is a want of privity, as between complainants and Thomas Gibert.

There cannot be an executor *de son tort* after there is a legal representative. *Wills. on Ex'rs* 139, *note ; Hall* vs. *Elliott, Peake N. P. C.* 87.

An executor *de son tort* cannot be sued with the administrator. *Calvert on Parties in Equity*, 145; *Wills. on Ex'rs.* 141.

A creditor cannot pursue assets in the hands of a debtor, or in the possession of any third party, where there is a legal representative, except the representative be insolvent, or refuses to collect the assets, or there is collusion between the representative and the person holding the assets. *Story Eq. Pl. secs.* 178, 514, 227.

There is no equity in the case, as made in complainants' bill.

The facts constituting the equity of the complainants' case must be fully and distinctly set forth, and not left to inference. *ib. secs.* 27, 241 ; *Butler and others* vs. *Durham*, 2 *Kelly R.* 419.

A court of equity will not assume jurisdiction unless the case is clear. 1 *id.* 514.

*By the Court.*—Lumpkin, J., delivering the opinion.

One Darius Gilbert of the county of Hancock, died, leaving a will, and having appointed Thomas Gilbert and one William M. Hardwick his executors. Hardwick alone qualified. Hardwick was finally removed from the trust on account of alleged waste and mismanagement, and Henry Rogers was appointed administrator *de bonis non, cum testamento annexo.* The creditors of Darius Gilbert filed their bill in the Superior court of Hancock county, against Rogers, the present representative, Hardwick, the re-

moved executor, and Thomas Gilbert, who is charged in the bill with having colluded with Hardwick in the fraudulent waste and mismanagement of the estate, while in his (Hardwick's) hands. The bill states that the creditors do not know whether or not Rogers has any of the effects in his hands, and it does not charge that he is insolvent, that he is unwilling to do his duty in collecting in the assets for the purpose of being administered, or that he is in any wise connected with the alleged fraud between the other two defendants.

To this bill, Thomas Gilbert, one of the defendants, demurred, because, 1st, the complainants had ample remedy at law, 2nd, for want of jurisdiction, he being a citizen of Stewart county and not of Hancock where the bill was filed, 3d, for multifariousness, 4th, for want of equity.

The demurrer was overruled, and upon this decision, the bill of exceptions is founded.

[1.]   From the view which we have taken of this case, it will not be necessary to examine all of these grounds.   We are of opinion however, that there is equity in the bill, and that chancery would assume jurisdiction over the subject matter, if the parties were properly before the Court.

.   Can Gilbert be brought to Hancock county, and, together with Hardwick, be joined with Rogers in this proceeding?

In behalf of the plaintiff in error it is contended that he cannot, and the stern and imperative language of the constitution of the State is invoked, which requires the defendants in all "*civil cases*," to be sued in the county where they reside.

The 1st section, 3d article of the constitution of 1798, declares that "the judicial powers of this State shall be vested in a Superior Court and in such inferior jurisdictions as the legislature shall from time to time ordain and establish.   The Superior court shall have exclusive and final jurisdiction in all criminal cases, which shall be tried in the county wherein the crime was committed, and in all cases respecting the titles to land, which shall be tried in the county where the land lies.   The Inferior courts shall have cognizance of all other *civil cases*, which shall be tried in the county wherein the defendant resides, except in cases of joint obligors residing in different counties, which may be commenced in either county; but the legislature may by law, to which two-thirds of each branch may concur, give concurrent jurisdiction to the Superior courts."   *Marb. & Crawf. Dig*. 27, 28.

Gilbert *vs.* Thomas et al.

The question is, is an *equity case,* a *civil case* according to the true intent and meaning of this clause? No doubt but that the language is broad enough to include *equity* as well as *common law cases,* inasmuch as both branches of jurisdiction fall under the denomination of *civil,* in contradistinction from *criminal* cases. But was this the design of the framers of the constitution? We are clearly of the opinion that it was not.

The constitution does not provide for the exercise of any equity jurisdiction whatever. It declares, as will be perceived, that "the Superior courts shall have exclusive and final jurisdiction in all criminal cases, which shall be tried in the county wherein the crime was committed;" " and in all cases respecting titles to land, which shall be tried in the county where the land lies." These provisions clearly relate to the common law jurisdiction of those courts, and it is thus seen, that with the exception of the power to correct errors, to order new trials, and their appellate jurisdiction, the *only jurisdiction* granted by the *constitution* to the *Superior* courts was in criminal cases and in *cases respecting titles to land.* It granted no general jurisdiction in *equity cases,* and of course made no provision for *such cases.*

The article proceeds to declare, that the *Inferior courts* shall have cognizance of *all other civil cases.* Thus, then, under the constitution of 1798, the *Inferior court* had *exclusive* jurisdiction in all civil cases excepting those respecting titles to land; and if the term *"civil cases,"* as used in that instrument, embraced equity cases, it follows that *equity jurisdiction* was vested in the *Inferior,* to the exclusion of the Superior courts, an absurdity that no one will impute to the authors of the constitution.

If the constitution had embraced *equity cases,* no conceivable reason can be assigned why a provision was not made for *joint defendants in equity,* similar to that respecting *joint obligors,* and which by subsequent amendments has been extended to *indorsers* as well as *co-obligors* and *joint promissors.* The constitution declares, that the judicial powers of this State shall be vested in a Superior Court and in such inferior jurisdictions as the legislature shall from time to time ordain and establish. It gives to the general assembly power "to make all laws and ordinances which they shall deem necessary and proper for the good of the State, which shall not be repugnant to the constitution."

The term *"judicial powers,"* embraces all cases, criminal and civil, at common law and in equity, and the legislature in regu-

lating them, were authorized to make any arrangement of them not repugnant to the constitution. In the exercise of this power they vested jurisdiction in equity cases in the Superior courts, having previously given those courts concurrent jurisdiction with the Inferior courts in all civil cases.

The equity jurisdiction was created by the Act of 1799. It was a special grant, and gave an exclusive jurisdiction. It authorized the Superior courts to " exercise the powers of a court of equity," by such proceedings as were " usual in such cases." One of the distinguishing characteristics of such a court is, that it calls before it all persons within its jurisdiction who have any interest in the matter pending before it; without this its jurisdiction cannot be exercised. And the argument, that a party residing out of the county in which a bill is filed cannot be made a defendant in that suit, seeks to destroy the equity jurisdiction of the Superior courts, by subjecting it to a provision of the constitution which is solely applicable to those cases for the trial of which that instrument had provided, and in which it had, by an additional provision, obviated the difficulty which that provision would have created in cases where defendants resided in different counties.

When it is considered that the grant of equity power or jurisdiction, was made by the Act of 1799, and that for half a century it has been exercised in the manner now objected to; that such exercise has been regulated by rules of court made by individual judges, and by the collective body of judges assembled in convention, the question under consideration would seem to be no longer open.

The case of *Grimball & Ross, T. U. P. Charlton R.* 175, has been cited in opposition to the foregoing construction. It was there decided, and we believe rightly, that an *equity case* was a *civil case* within the provisions of the alleviating law of 1807; and it shows that words and phrases are to be interpreted according to their collocation, and not their abstract signification.

The Act of 1807 forbade the courts " to issue any civil process or to try any *civil cases* which had before been sued out, except for the trial of the rights of property, and in cases of attachment," &c. Here the intention of the legislature was sweeping, embracing all civil cases except those specified. The Superior courts were then exercising an *equity jurisdiction* under the Act of 1799. The process issued in them was no doubt *civil*, as contradistinguished from *criminal* process, and equity cases were consequently

within the provisions of the act. This was rendered yet more certain by the object and intent of the act, which was "to alleviate the condition of debtors," to relieve them from being sued; and no possible reason could be assigned consistent with that intention, for distinguishing between suits at law and suits in equity. The *constitutional* question, therefore, remains untouched by this adjudication.

The Judiciary Act of 1799 declares that "*all suits* of a *civil nature*, cognizable in the Superior and Inferior courts respectively, shall be *by petition* to the court," &c. Now, while it is admitted that the expressions here used are broad enough to include *equity cases*, yet they apply only to common law cases, for the very same. act provides that equity cases shall be *by bill*, &c.

We deem it unnecessary to press this point further; and if any apology were necessary for this extended discussion, it would be found in the intrinsic merit of the question now for the first time to be solemnly settled by this Court. And I cannot omit, in justice to myself, to acknowledge my obligations for the clear conclusions to which I have come upon this constitutional point, to the unpublished argument of one who is justly esteemed by all, as the head and ornament of the legal profession in his State, and who, if he has failed hitherto to attain the highest reward of his calling in the gift of the country, it is conceded by all that it was not because he was undeserving of it.*

We propose now to consider this demurrer aside from the [2.] constitution. As a general rule, creditors cannot sue the debtors of an estate, nor can the debtor be made a co-defendant to a bill at the instance of a creditor, against the executor, unless there be collusion, insolvency, unwillingness to proceed to collect the assets, or some other special facts, to warrant it. 1 *Vesey R.* 105; 2 *Atk. R.* 213; 6 *Vesey R.* 749 *et seq.;* 9 *id.* 86, 87; 1 *Myl. & Keene R.* 240; *Story Eq. Pl. ch.* 4, *sec.* 178, *and notes; Cooper Eq. Pl.* 175; *Mit. Eq. Pl. by Jeremy,* 158; 1 *Johns. Ch. R.* 395; 18 *Vesey R.* 72; 1 *Ves. & Bea.* 248; 1 *Rose* 70; 11 *Vesey R.* 29.

Does this bill set forth any circumstance to justify a departure from the general principle so well established by such a multiplicity of decisions? It is not pretended that Henry Rogers, the present representative, is insolvent, that he has omitted any duty which it was incumbent upon him to perform, or that he has com-

* Hon. J. M. Berrien.

bined with the co-defendants, or either of them, or any body else, or been guilty of any improper act whatever in connexion with the estate. Why, then, should the creditors interpose between him and his duties and privileges as administrator. They assign no reason—none occurs to this Court.

His honour, Judge Sayre, held, and we think very properly, that it was the duty of Rogers to collect whatever assets remained in the hands of Hardwick unadministered, and to call not only him to account, but all other persons who may have assets of the deceased in their possession, not derived *bona fide* from the executor. And by the Act of 1845, *Pamphlet p.* 15, defining the rights and powers of administrators *de bonis non*, the legislature have made it the duty of executors who may have been heretofore removed, and who were chargeable to the estate which they represented, to *account fully* with the administrator *de bonis non*, who may be appointed to finish the administration of the estate ; and of course this act confers upon the present representative the right to compel such account. Nor is there any thing, in the opinion of this Court, in Thomas *vs.* Hardwick which conflicts with this view. We maintained there, that the creditor could not be divested, by the statute, of the rights which he had acquired under his judgment, " *especially as the plea did not aver, as it should have done, that the defendant had fully administered all of the assets which came to his hands, except what he had delivered over to the succeeding administrator.*" 1 *Kelly R.* 83.

So far from deciding that this act was unconstitutional or inoperative, as has been assumed in the present argument, it will be seen that there is a strong intimation to the contrary.

It is insisted on the part of the defendant in error, that wherever there is a partial or limited administration which has terminated, and there is an existing representation, it is not only the privilege but the indispensable duty of the creditors to bring all of the representatives before the court, in order that there may be a full and complete distribution of the estate. We hold this to be a sound position, and one fully sustained by the case cited from 14 *Con. Ch. R.* 94, *and Calvert on Parties.*

But in the case at bar, it is evident that the object of this bill is not of this character. So far from complaining that the present representative withholds the assets, it is not alleged that he has any. Indeed, to borrow the appropriate figure of counsel, the only office of Mr. Rogers seems to be " to light up the stage and

then disappear behind the scenery." Could he not demur to the bill for want of equity as against him? and if so, is it not apparent that he is improperly joined with the other defendants?

While we are satisfied that the constitution does not apply to equity causes, yet we cannot shut our eyes to the fact which stands out so prominently on the face of it, to wit, that the citizen shall not be drawn to a distance from the county of his residence to litigate among strangers, where it may be very inconvenient, if not impossible, to give security on the appeal, and to comply with other burdens imposed by the law to enable him to contest his rights, unless it is indispensably necessary to enable the court to do complete justice.

Here, so far from any such necessity existing, the very contrary appears to us to be true. We believe that we shall do violence to the rights of Rogers, who is not in default, and between whom and his co-defendants there is no privity, should we retain jurisdiction over Thomas Gilbert in Hancock county, in the proceeding which has been instituted; and for this reason, the judgment below must be reversed.

My brother Benning seems to think, that there is some antagonism between the cases of *Thomas* vs. *Hardwick*, 1 *Kelly R.* 78; *Crafton* vs. *Beal, ib.* 322, *and Broach* vs. *Walker*, 2 *id.* 428. After the most careful scrutiny and close comparison, we confess that our intellectual optics are too dim to discover the conflict.

In the *first*, the Court decided that by the *common law*, "an administrator *de bonis non* could not call the representative of the deceased executor or administrator to account for any property which their testator or intestate may have converted or wasted;" and that "the act of 1845 to define the rights and powers of administrators *de bonis non*, does not extend to suits brought and prosecuted to judgment before its passage."

In the *second*, "the testator left a will, naming several executors, to whom he bequeathed in trust for certain grand-children, a portion of his estate; one of the executors only qualified, and receiving the trust property, afterwards died intestate before the trust thus devolved on him was entirely executed. After his death, another of the executors named in the will, came forward and qualified within the twelve months provided by the statute." The Court held, that "the last qualified executor was entitled to the possession of the *unadministered* portion of the trust estate, and not the administrator of the deceased executor."

And in the last case, the court maintained that "it is a good plea for a defendant who is sued as executor, "that since the last continuance of the cause, his letters testamentary have been revoked" (under the statute on account of the birth of a posthumous child,) "and administration committed by the Ordinary to another, *to whom he has delivered over all the goods in his hands.*"

The cases speak for themselves, and need no comment to harmonize them.

Judgment reversed.