## DUNN et al. v. PETERS et al.

### No. 3413.

Court of Civil Appeals of Texas. Beaumont.
March 16, 1939.

Francis B. Dunn, of Port Arthur, and J. W. Simpson, Jr., and Geo. B. Darden, both of Conroe, for appellants.

Pitts & Liles, Ned Wallace, and W. C. McClain, all of Conroe, for appellees.

O'QUINN, Justice.

This action was brought by S. I. Dunn and others as the sole and only heirs of Lem E. Dunn, against Linna Peters, Fred Peters and the J. S. Hunt Lumber Company, for title to certain timber, and judgment for damages for the manufactured value of timber cut and removed from the land.

Defendants Linna Peters and F. J. Peters answered by general demurrer, special exceptions, general denial, plea of not guilty,

and specially plead the two, three, five, ten, and twenty five years statutes of limitation in bar of plaintiffs' right to recover.

The defendant J. S. Hunt Lumber Company answered by general demurrer, general denial, plea of not guilty, and specially plead the two and ten years statutes of limitation in bar of the plaintiffs' right to recover. By cross action it plead over against the defendants Linna and Fred J. Peters, and prayed for judgment against them for any amount plaintiffs might recover against them.

Cross defendants answered the cross suit of defendants Linna Peters and Fred J. Peters against them by general demurrer and general denial.

Plaintiffs by supplemental petition replied to the answer of defendants Linna Peters and Fred J. Peters by general demurrer and general denial.

The case was tried to the court without a jury, and judgment rendered that plaintiffs take nothing by their suit. This appeal is from that judgment.

On October 13, 1877, Lem E. Dunn was the owner of 320 acres of land, known as the James Slayman tract in Montgomery County, Texas. On that date he conveyed this land to Fred Peters, describing same by metes and bounds with this reservation: "less ten acres to be taken out of the east corner of this survey on the I. & G. N. R. R. to be taken in a square form and 'Reserving' to myself the timber growing on said land suitable for Mill purposes and tie timber and privilege of opening necessary roads through said land to my said mill and using them, hereby and herein retaining a vendor's lien on said land to secure the payment of the purchase money thereof." The habendum clause in said conveyance reciting: "To have and to hold the said land, together with all and singular the rights, members, appurtenances, hereditaments and improvements to the same in any wise incident, appertaining or belonging unto him the said Fred Peters, his heirs and assigns forever, and I will and my heirs, executors, administrators and legal representatives *st* all forever 'warrant' and defend the title in and to said land and premises unto him the said Fred Peters his heirs and assigns against the claim or claims of any and all persons claiming or to claim the same or any part thereof. Saving and Excepting the ten acres herein before reserved and the timber privilege, also herein reserved." This deed was recorded in the Deed Records of Montgomery County on February 21, 1878.

Appellants contend that the timber reservation in the deed was a fee simple reservation of the title to the timber to Lem E. Dunn and his heirs and assigns forever which carried with it the right of sustenance from the soil until such time as they saw fit to remove same. This contention is denied by appellees, they asserting that the reservation was of but a chattel right in the timber only "suitable for mill purposes and tie timber" then standing upon the land, which, in the absence of a stipulated time for removal, must have been removed within a reasonable time, and that such reasonable time for removal having long since elapsed, the right to remove the timber was barred by limitation. They plead the five and ten years statutes in bar of the appellants' claim.

The deed from Dunn to Peters was dated October 13, 1877. Peters immediately took possession of the premises, and built a home for himself and family and continuously resided thereon until his death on April 7, 1926. In part payment for the land, Peters executed his two vendor lien notes payable to Dunn in one and two years. These were paid. At the time of the sale of the land to Peters, Dunn had a small sawmill near the land and operated same and about the time (two years—1880) the last note was paid moved the mill away. We think it reasonably inferable that Dunn understood that his timber reservation was for an opportunity and reasonable time in which to cut and remove the timber and that in the time he had his mill near to the timber he had cut over the land, and so moved it to other parts, else why should he abandon his "Timber privilege" and move his mill away. From 1877 to the institution of this suit in 1937, 60 years, he nor any one claiming under him ever made a claim to the timber, or in any manner objected to Peters cutting the timber. They did not render the property for taxes, but to the contrary, Peters, regularly rendered and paid taxes all these years without mentioning the timber in his renditions.

However this may be, soon after Dunn moved his mill, in the early eighties, Peters sold the timber then on the land to a man named Bearing who cut timber from the whole tract. In 1906, Peters bought a small sawmill, placed it on the land and began to cut timber and saw it into lumber selling it to people in the community as

they gave orders for it. He also from time to time cut small timber and sawed it into ties which were sold to the I. & G. N. R. R. and the Santa Fe Ry. Peters selected the timber (both mill timber and tie timber) from and over the whole tract. This he did continuously until about three years before he died in 1926. It was occasionally operated during these three years. In 1926, the year Peters died, his son, Fred Peters, Jr., who was away from home, returned, and, after his father's death, he operated the mill in the same manner as had his father, that is cut logs for the manufacture of lumber from over the whole tract, and likewise timber for sawing ties. This he continued to do for four or five years when the mill burned. Then he cut and hewed ties on the land. He also cut and sold considerable timber for piling, cutting all over the tract. This was done several times continuing for several months at a time. On March 1, 1926, Fred Peters conveyed the land to his daughter, Miss Linna Peters, without any reservation, by regular warranty deed. This deed was placed of record March 1, 1926. Miss Linna Peters was a single woman living with her father. After his death she continued to reside on the land, and the mill was operated by her brother, as above stated. On January 21, 1937, Linna Peters conveyed all the merchantable pine timber on the land to Ned Wallace, Trustee, and by mesne conveyances it passed to J. S. Hunt Lumber Company, one of the appellees. It was admitted that the fence erected by Peters around the land was continuously maintained, and all taxes on the land were paid by the Peters before any became delinquent. Several persons attempted to buy the timber from Peters, but he refused to sell. He so cut he timber as to preserve the smaller growth and to maintain a constant supply on the land.

 It is contended by appellants that the possession of Peters of the surface of the land did not support the pleas of five or ten years limitation, Vernon's Ann.Civ. St. arts. 5509, 5510—that the reservation of the timber in his conveyance from Dunn severed the timber estate from the surface estate, and so Peters' possession of the surface was not possession of the timber, and no title by limitation was perfected to the timber. That is the general rule, but under the facts here, it does not apply. After Dunn moved his mill away, in the early 80's, Peters sold the timber to a man named

Bearing who had a mill near by, and he cut the timber all over the tract. Peters from at least 1906, when he erected his sawmill on the land, was in possession of the land upon which the timber grew, and actively, openly and continuously exercised the right and claim to the timber, cutting it as it pleased him all over the tract of land and appropriating it to his own use and benefit. This possession of the timber and acts of ownership and the constant cutting and appropriating it continued until his death April 7, 1926, and was then continued after his death by his son until the mill burned some four or five years later. All this time the possession of the timber was open, notorious, hostile and exclusive. All of his neighbors knew of his taking possession of and use of the timber, and that he was cutting timber constantly from all portions of the tract for many years. He regularly rendered the land for taxes without any mention of not owning the timber, and paid all taxes before any became delinquent for more than five years, and for more than ten years successively before this suit was filed, and exercised all the indicia of ownership over the timber, and held, controlled and used same for a continuous period of time more than sufficient to mature the bar of limitations of five and ten years. The court's judgment, from this point of view, has abundant support in the record.

 The assignment that the court erred in permitting the witness Fred Peters, son of deceased, to testify, because he being a son of the deceased Fred Peters, could not testify as to what his father did touching the timber for in that it would be testifying to a transaction with his deceased father. This assignment is overruled. He was not an interested party. His father had in 1926 conveyed the whole of the property to his daughter, Miss Linna Peters, sister of the witness. The property was not a part of his deceased father's estate, but was the individual property of his sister. He was not testifying to a transaction with his deceased father, nor as an heir to any interest in the property, but simply as a witness as to what his father did in the management of his own estate. Furthermore, he was testifying as a witness for the defendant Hunt Lumber Company, who had purchased the timber from Wallace, a grantee of Miss Peters, and who was an opposite party having plead over against Miss Peters its grantor on her warranty. If it could be said that the

evidence was objectionable for the reason urged by appellants, they waived their objection by eliciting from the witness on cross examination the same facts testified to by him on his direct examination. Cox v. McClave, Tex.Civ.App., 22 S.W.2d 961; Walkup v. Stone, Tex.Civ.App., 73 S.W.2d 912.

■ We overrule appellants' objection to the testimony of the witness Fred Peters as to his father's cutting and disposing of the timber in question, because the facts testified to by the witness was but his conclusion, it appearing that he did not live on the premises from 1906 to 1926. While the witness did testify that he was away from home from 1906 to 1926, it appeared that he visited his home pretty frequently and was familiar with the affairs. When the court overruled the objection, he admonished the witness "Just tell what you know." In any event, if the ruling was error, it was harmless for the reason that the case was tried to the court, and it is presumed that he considered only legitimate evidence.

The judgment is affirmed.