Myrtle Mae Chandler Et Al v. R. C. Welborn Et Al.

No. A-5540. Decided October 10, 1956.
Rehearing Overruled November 28, 1956.
(294 S.W. 2d Series 801)

314

*Hawkins & Dean* and *L. D. Hawkins,* of Breckenridge, for petitioners.

The Court of Civil Appeals erred in holding that respondents, who sue herein as mere creditors, may set aside the deed of April 5, 1951, executed by Senator W. J. Cunningham, Sr., notwithstanding they are not such creditors as are contemplated by the statute, Articles 3996, 3997, of the Revised Statutes of Texas. Daniels v. Jones, 224 S.W. 476; Logan v. Thomason, 202 S.W. 2d 212; John Hancock Mutual Ins. Co. v. Morse, 132 Texas 534, 124 S.W. 2d 330.

*Bradbury, Tippen & Brown* and *Bryce Bradbury,* of Abilene, for respondents.

MR. JUSTICE WALKER delivered the opinion of the Court.

■ On the principal question involved in this case, we hold that creditors of a decedent may maintain an action for the benefit of the estate to set aside a deed executed by the decedent while insane if: (1) the other nonexempt assets of the estate are not sufficient to pay the claims of creditors, (2) the property conveyed by such deed would be subject to the payment of such claims if owned by the decedent at the time of his death, and (3) the heirs and personal representative of the decedent are adversely interested and attempt to uphold the deed.

Senator and Mrs. W. J. Cunningham owned as their community homestead two lots in the city of Abilene. When Mrs. Cunningham died intestate in 1947, her one-half interest in the property passed to her three children, Myrtle Mae Chandler, Florence Irion, and W. J. Cunningham, Jr., who are the petitioners in this case. Senator Cunningham continued to make his home on the property, but was a patient in the hospital from 1950 until his death in 1952. On April 5, 1951, he executed a deed conveying his interest in the property to petitioners in equal shares, and this is the instrument which is under attack in the present case.

About a month after the deed was executed, petitioners instituted suit in trespass to try title against their father and his sister, Mrs. R. C. Welborn, who is one of the respondents, for the recovery of title to and possession of the property. The defendants answered with a general denial. Another respondent, Hendrick Memorial Hospital, intervened in the suit, claiming to be a creditor of Senator Cunningham and alleging that the

property had been abandoned as his homestead and that the conveyance to petitioners was in fraud of creditors, and prayed that the deed be set aside. This was the status of the case at the time of Senator Cunningham's death.

After the Senator's death, petitions in intervention were filed by the other respondents, who are also creditors of his estate. Mrs. Welborn filed an amended answer in which she claimed as a creditor of the estate and asserted a cross-action against petitioners to set aside the deed on the ground that the grantor was of unsound mind at the time it was made. Myrtle Mae Chandler, petitioner, having been appointed administratrix of her father's estate, respondents filed amended petitions in intervention, making her a party to the suit in that capacity and adopting the cross-action alleged in Mrs. Welborn's amended answer.

The suit then became a controversy between respondents on the one hand and petitioners on the other, the former seeking to set aside the deed and the latter attempting to uphold it. The jury found, in response to the single special issue submitted, that Senator Cunningham was of unsound mind at the time he executed the deed to petitioners, and the trial court entered judgment that the deed be set aside and cancelled. This judgmnt has been affirmed by the Court of Civil Appeals. 282 S.W. 2d 940. We have concluded that the judgment of the Court of Civil Appeals should be affirmed. The case was tried before the effective date of the Texas Probate Code, and we refer in this opinion to the statutes as they existed prior to January 1, 1956.

■ Petitioners advance a number of arguments in support of their contention that respondents are not entitled to maintain this suit. The parties stipulated that the property was Senator Cunningham's homestead at the time he made the deed. Petitioners argue that the deed cannot be set aside at the instance of creditors, because the property was exempt from their claims when the conveyance was made. It is well settled that a conveyance of exempt property may not be attacked on the ground that it was made in fraud of creditors. Sorenson v. City Nat. Bank, 121 Texas 478, 49 S.W. 2d 718; Crow v. First Nat. Bank of Whitney, Texas Civ. App., 64 S.W. 2d 377; Johnson v. Echols, Texas Civ. App., 21 S.W. 2d 382 wr. ref. See also 20 Texas Jur. 381, Sec. 18. The judgment setting aside the deed in the present case, however, is based on a jury finding that the grantor was of unsound mind.

■ A deed executed by a person of unsound mind may be set aside during the lifetime of the grantor at the instance of his guardian or in an action instituted by the grantor after he recovers his sanity. This cause of action survives the death of the grantor, and ordinarily passes to his heirs, devisees or personal representatives. See 12 C.J.C., Cancel. of Inst., p. 1016, Sec. 45; 9 Am. Jur., Cancel. of Inst., p. 357, Sec. 10. As pointed out by the Court of Civil Appeals, no constituent member of Senator Cunningham's family survived him, and if the conveyance is set aside, his interest in the property will be subject to the payment of respondents' claim. Under these circumstances the statutes and rules relating to exempt property and the right to attack conveyances made in fraud of creditors simply have no application.

Petitioners also contend that creditors do not have such an interest in the estate of their deceased debtor as will enable them to maintain a suit of this character, and cite Logan v. Thomason, 146 Texas 37, 202 S.W. 2d 212; Daniels v. Jones, Texas Civ. App., 224 S.W. 476 wr. ref.; and Pena y Vidaurri's Estate v. Bruni, Texas Civ. App., 315 wr. ref. These cases hold that a creditor of, or person claiming to have purchased property from, a decedent is not a "person interested" in the estate within the meaning of arts. 3315 and 3339, and hence has no standing in court either as proponent or contestant of a purported will left by the decedent. Creditors clearly have no interest in the probate of their debtor's will, because the payment of their claims will not be affected thereby. It is immaterial to them by whom their claims are paid, or whether the assets of the estate are administered under the will or as in the case of intestacy. See Daniels v. Jones, supra.

It is very material to respondents, however, whether Senator Cunningham's deed to his children is set aside or permitted to remain in effect. The grantor owned no other property at the time of his death. If the conveyance stands, respondents will receive nothing on their claims. If the deed is set aside, the grantor's one-half interest in the property can be used to pay their claims. When the other assets of the estate liable for the payment of claims are not sufficient to pay the same, the creditors have a direct and substantial interest in the recovery by the estate of property which can be used to pay such claims.

■ Under the provisions of Art. 3314, the property of a person who dies intestate passes to his heirs at law, but the administrator has the right to possession of the estate, except property

exempted by law, as it existed at the death of the intestate. Creditors of the decedent do not own a direct interest in the property as such, but their situation is somewhat analogous to that of stockholders of a corporation whose directors refuse to institute suit to enforce corporate rights or redress a wrong done the corporation. Although the stockholders own no direct interest in the assets of the corporation, equity recognizes their right under certain circumstances to institute suit for the benefit of the corporation.

Article 1981 of our statutes provides that suits for the recovery of real and personal property belonging to the estate of a decedent may be instituted by the executor or administrator, and judgment in such cases is conclusive in the absence of fraud or collusion on the part of the representative. This statute states a general rule of procedure, and in the absence of circumstances requiring the intervention of equity vests in the personal representative the prior and exclusive right to bring such suits. It is clear, however, that the statute does not operate to deny in all cases the right of persons other than the executor or administrator to institute an action for the benefit of the estate. When administration is pending, the heirs are generally not entitled to maintain a suit for the recovery of property belonging to the estate, but in Barrera v. Gannaway, 130 Texas 142, 105 S.W. 2d 876, we observed that there are exceptions to this rule as pointed out in the opinion of the Court of Civil Appeals in that case. The last mentioned opinion, which is found in 74 S.W. 2d 717, after stating the general rule governing the maintenance of suits by heirs, declares that:

" 'Other exceptions to the general rule exist in cases where, there being an administration, it appears that the administrator will not or cannot act, *or that his interest is antagonistic to that of the heirs desiring to sue.* Rogers v. Kennard, 54 Texas 37; Lee v. Turner, 71 Texas 264, 266, 9 S.W. 149, 150; Modern Woodmen v. Yanowsky, Texas Civ. App. 187 S.W. 728.' "

If Art. 1981 does not preclude the maintenance of suit by heirs under these circumstances, it is no obstacle to a suit by creditors in a similar case.

Many years ago this Court recognized that under certain circumstances creditors of a decedent must be permitted to bring suit for the protection of their interest in the estate. The opinion in Crain v. Crain, 17 Texas 80, states:

"* * * that the administratrix is a trustee, acting for the benefit of creditors and distributees, and that in cases where she will not or cannot act for the protection ·and preservation of the estate, the cestui que trusts have· a right to act in the behalf· and for the protection of their eventual interests, and that such rights are the proper subjects of judicial cognizance."

■ Equity will not suffer a right to be without a remedy. And when the legal remedies available to creditors are not adequate for the protection of their interests in the estate of their deceased debtor, equity will permit them to maintain a suit for the benefit of the estate. Mead Co. v. Doerfler, 146 Neb. 21, 18 N.W. 2d 524, 158 A.L.R. 724; Rummens v. Guaranty Trust Co., 199 Wash. 337, 92 Pac. 2d 228; Sayres v. Johannes, 116 Misc. 497, 190 N.Y.S. 247; Gilbert v. Thomas, 3 Ga. 575; Annotation, 158 A.L.R. 729. In Pomeroy's Equity Jurisprudence, 5th ·ed. 1941, Vol. 4, p. 459, Sec. 1154b, the rule is stated as follows:

"By virtue of the auxiliary jurisdiction of equity, a creditor may maintain a suit, somewhat in the nature of a 'creditor's bill,' to reach assets which justly and equitably belong to the estate, and to bring them within the power and control of the administrator, so that they may be administered upon and distributed by him."

■ When an executor or administrator refuses to account for property in his possession belonging to the estate or fails to exercise ordinary diligence to recover assets of the estate, the creditors usually have an adequate remedy by suit on the representative's bond. It is our opinion, however, that this is not an adequate remedy in the present case. The amount of an administrator's bond is determined by the value of the property owned by the decedent at the time of his death. Since the estate owns no property other than the cause of action to set aside the deed, it may be assumed that only a nominal bond was required of his administratrix. In the second place, the heirs and administratrix hold and claim the property under a deed from the decedent which is voidable but not void, and the administratrix could not be charged with a violation of any duty with respect to such property until the deed is set aside.

It has also been suggested that respondents might obtain an order from the probate court directing the administratrix to institute suit to set aside the deed, and have her removed in the event she failed to comply with the order. It has been said that a personal representative may not bring suit against himself as an individual, 14-A Texas Jur. 772, Sec. 811, but we shall

assume that the administratrix could maintain the present suit. The probate court may or may not direct her to institute the suit, or order her removal for failure to do so. Either side may appeal from its orders on either of these questions. If the present administratrix is finally removed, there are two other grantees in the deed who have a right to be appointed in her place which is prior to that of any disinterested person. Further litigation would then be necessary to compel the successor representative to institute suit or to obtain his removal for refusing to do so. After extended preliminary litigation and a long delay, the administratrix or her successor might be forced to bring suit. If the suit is brought by the present administratrix or by either of the other grantees who is appointed in her place, it would be somewhat less than realistic to expect that the action would be prosecuted with the vigor and zeal necessary to protect the rights of creditors. We think that under these circumstances the creditors should not be required to incur the expense and suffer the delays involved in compelling the personal representative to bring suit. The administratrix is a party to this action, and the estate will be bound by the judgment entered herein. There is no danger of a second suit, and the grantees in the deed are not prejudiced in a legal sense by permitting the creditors to maintain this suit. See discussion in Prusa v. Everett, 78 Neb. 251, 113 N.W. 571.

■ Petitioners argue that when the Legislature enacted Arts. 3996 and 3997, it preempted the field of suits by a creditor to set aside the deed of his debtor, and that these statutes provide the only remedy creditors have against the grantees of their debtor. The two articles govern the right to attack transfers and certain other transactions by a debtor where there is either absence of consideration or an intent to hinder, delay or defraud creditors. They do not purport to define, limit or deny the right of creditors to maintin a suit to set aside the conveyance of a decedent who was insane at the time of its execution, and should not be given the construction or effect for which petitioners contend.

By their fourth point, petitioners say that they as individuals were not made parties to the suit by any respondent who is a creditor of the estate, and that the judgment of the trial court cannot stand because the grantees in the deed are necessary parties. Petitioners are named as adverse parties in the second paragraph of Mrs. Welborn's amended answer, but they contend that the evidence fails to show that she is a creditor of the estate. We shall assume that they are correct in this latter contention.

■ The introductory paragraphs of the pleadings on which the other respondents went to trial expressly name only the administratrix as an adverse party, but in the body of such pleadings respondents adopt the cross-action alleged in the second and third paragraphs of Mrs. Welborn's amended answer. It clearly appears from these pleadings that respondents seek to set aside the deed against petitioners as individuals. Petitioners through their counsel participated in the trial of the case and vigorously contested respondents' action to set aside the deed. They have not been misled or prejudiced in any way, and are so connected with the suit by their interest in the result and their active participation in and control of the litigation as to be bound by the judgment regardless of whether they were properly named as adverse parties in respondents' pleadings. See Miller v. Dyess, 137 Texas 135, 151 S.W. 2d 186, 137 A.L.R. 578; Perkins v. Terrell, Texas Civ. App., 214 S.W. 2d 551, wr. ref.; Mims v. Hearon, Texas Civ. App., 248 S.W. 2d 754, no writ; Annotation, 139 A.L.R. 9. Under these circumstances, they cannot be heard to say that they were not made parties to the suit.

Petitioners' remaining points assert that the trial court erred in the exclusion of certain evidence and the admission of other evidence. In her written deposition taken at the instance of petitioners, Mrs. Chandler testified in response to direct interrogatories that she had observed Senator Cunningham while he was in the hospital, and that his mental condition was good at the time he signed the deed. The trial court excluded this testimony upon the respondents' objection that the same contravenes Art. 3716, Vernon's Ann. Texas Civ. Stat., commony known as the Dead Man's Statute.

When the deposition was taken, the witness was a party to the suit in her individual capacity, but not in the capacity of administratrix of Senator Cunningham's estate. Petitioners argue that the competency of a witness under Art. 3716 is determined as of the time the testimony is taken, and that the suit was not an action by or against heirs or representatives of a decedent when Mrs. Chandler gave her deposition. The Court of Civil Appeals concluded that statute applied to the action even before the administratrix was made a party, but it is not necessary for us to decide that question.

■ Article 3716 expressly extends to actions by or against executors, administrators or guardians in which judgment may be rendered against them as such, and to all actions by or against heirs or representatives of a decedent arising out of

any transaction with the decedent. Whether the *action* falls within the terms of the statute is determined as of the time of the trial. Pugh v. Turner, 145 Texas 292, 197 S.W. 2d 822, 172 S.W. 2d 707. Since the administratrix was a party to the suit in her representative capacity at the time her testimony was offered, the action is one to which the statute applies.

■ If the action falls within the provisions of the statute, then neither "party" is permitted to testify against the other as to any transaction with, or statement by, the testator, intestate or ward. We do not attempt to frame a definition which comprehends all of the decisions bearing on the question, but as a general rule the word "party" means a person who has a direct and substantial interest in the issue to which the testimony relates and who is either an actual party to the suit or will be bound by any judgment entered therein. See Lehmann v. Krahl, 155 Texas 270, 285 S.W. 2d 179; Newton v. Newton, 77 Texas 508, 14 S.W. 157; Ragsdale v. Ragsdale, 142 Texas 476, 179 S.W. 2d 291. Whether the *witness* is a "party" within the meaning of the statute is determined by the circumstances existing at the time his testimony is taken. Ragsdale v. Ragsdale, supra. When Mrs. Chandler gave her deposition, she was an actual party to the suit in her individual capacity and was interested in the issue to which the excluded testimony relates. It thus appears that both the action and the witness fall within the terms of the statute, and the parties recognize that the excluded testimony relates to a transaction with the decedent. It necessarily follows that the testimony was properly excluded unless the statute was waived by respondents.

Petitioners' direct interrogatories required the witness to state the extent to which she had observed her father in the hospital and to express her opinion as to his mental capacity at the time the deed was executed. Respondents propounded cross-interrogatories inquiring whether the decedent suffered from delusions, talked about imaginary events, made irrational statements, or failed to recognize old acquaintances. The cross-interrogatories thus called for answers relative to transactions with the decedent, but were restricted to the question of the decedent's mental capacity, which was the subject of inquiry in the direct interrogatories.

■ It is well settled that when the testimony of a witness, who would otherwise be incompetent to testify regarding the matters covered by Art. 3716, is taken by deposition and the "opposite party" initiates an inquiry relative to a transaction

with the decedent, the statute is waived and the witness may testify fully regarding such transaction. Jackson v. Jones, 74 Texas 104, 11 S.W. 1061; Allen v. Pollard, 109 Texas 536, 212 S.W. 468; Hopkins v. Robertson, Texas Civ, App., 138 S.W. 2d 310, wr. ref. But here the inquiry with reference to the decedent's mental condition was initiated by petitioners, and respondents merely cross examined the witness with reference thereto. So far as we have been able to determine, this Court has not decided whether such cross-examination constitutes a waiver of the statute.

■ The decisions of the courts of civil appeals are not in harmony on the question of whether the opposite party waives the statute by merely cross-examining the witness on the trial of the case with reference to matters brought out over his objection on direct examination. Some have expressed the view that waiver occurs if the cross-examination elicits the same facts brought out on direct examination. Walkup v. Stone, Texas Civ. App., 73 S.W. 2d 912, writ dis.; Dunn v. Peters, Texas Civ. App., 126 S.W. 2d 997, no writ. We think that the better rule is that the opposite party does not waive the statute if his cross-examination is limited to the testimony improperly admitted over his objection on direct examination. See Jones-O'Brien, Inc. v. Loyd, Texas Civ. App., 125 S.W. 2d 648, wr. dis.; Hupp v. Hupp, Texas Civ. App., 235 S.W. 2d 753, wr. ref. N.R.E.; Thomason v. Burch, Texas Civ. App., 223 S.W. 2d 320 wr. ref. N.R.E.; Annotations, 64 A.L.R. 1149, 107 A.L.R. 483, 159 A.L.R. 411.

■ It is well settled that cross-examination of a witness as to testimony improperly admitted over objection does not waive the right to complain of the error. Dallas Railway & Terminal Co. v. Bailey, 151 Texas 359, 250 S.W. 2d 379. And this is true even where the witness on cross-examination repeats or restates some or all of the evidence given on direct examination. Cathey v. Missouri, K. & T. Ry. Co. of Texas, 104 Texas 39, 133 S.W. 417, 33 L.R.A. N.S. 103. If an objection that testimony contravenes Art. 3716 is overruled, the party making the objection should not be required to determine at his peril whether reversible error has been committed and forego the right of cross-examination if he does not wish to waive the statute.

■ And when the testimony of a witness is taken by deposition, a party should not be compelled to choose between waiving either the statute or the right of cross-examination. There is no ruling on the admissibility of deposition testimony until the same is offered during the trial of the case. If the witness does

not testify in person at the trial, the opposite party must cross-examine at the time the deposition is taken or not at all. We hold, therefore that when the testimony of a witness is taken by deposition and one party initiates an inquiry relating to a transaction with the decedent, the opposite party does not waive the statute by simply interrogating the witness with reference to the facts brought out on direct examination. This rule preserves to the latter party the right to object to the testimony at the trial of the case, and to have the benefit of his cross-examination if the objection is overruled.

The trial court permitted Dr. Jack Haynes to testify, over petitioners' objection that the same is too remote, that when he observed Senator Cunningham in July, 1952, the latter did not recognize anyone and his mind was a total blank. The witness also stated that he could not, from what he observed at that time, express an opinion as to the Senator's mental condition fifteen month's earlier. The members of the jury were thus informed by the witness that his testimony has no bearing on the issue they were required to decide, and their verdict is amply supported by the other evidence in the record. Under these circumstances it cannot be said that the admission of the doctor's testimony, if erroneous, was reasonably calculated to or probably did cause the rendition of an improper judgment.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered October 10, 1956.

Rehearing overruled November 28, 1956.