**Doris M. KETTLER, Appellant,**

v.

**Gertrude David STEPHENS, Appellee.**

**No. 7846.**

Court of Civil Appeals of Texas.

Texarkana.

Jan. 9, 1968.

Rehearing Denied Jan. 30, 1968.

William Andress, Jr., Andress, Woodgate, Richards & Condos, Dallas, for appellant.

Royal H. Brin, Jr., Claude R. Miller, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellee.

DAVIS, Justice.

A will contest. Benjamin H. Stephens executed his last will and testament on October 20, 1960, revoking all prior wills and codicils theretofore made. On August 13, 1963, he executed a written codicil to his last will. He passed on January 7, 1965. The last will and codicil were filed for probate in the County Court of Dallas County by Gertrude David Stephens, who was named as independent executrix, a sister-in-law, on January 7, 1965. Doris M. Kettler, a granddaughter, filed a contest in which she alleged that the testator was not of sound mind or memory, or in any respect capable of making a will. She further alleged that the will and codicil were the result of undue influence. She offered no proof in the probate court. The will and codicil were admitted to probate on July 13, 1965. The contestant perfected her appeal to the District Court.

On October 3, 1966, the case went to trial in the District Court. The jury answered

all the special issues in favor of the proponent. The contestant has perfected her appeal and brings forward four points of error.

By her points, contestant says the trial court erred in excluding the testimony of Bessie Mae Roe, under Art. 3716 Vernon's Ann.Civ.St., regarding the mental conditions of the testator and the undue influence that was exercised upon him, because Bessie Mae Roe was not a party to the suit nor an heir or legal representative; in excluding the testimony of testator's only surviving daughter, Betty Jean Perry, regarding transactions with testator when contestant tried to call such witness under the adverse witness rule; in excluding the testimony of a conversation between testator and Joe C. Stephens, Jr., (deceased prior to the trial) as hearsay; and, contestant alleged the admissibility of the testimony or evidence of Bessie Mae Roe and Betty Jean Perry amounted to such a denial of the rights of the contestant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment.

To give a full history of all the marriages, action, experiences and ramifications in this case would make quite a story. We will make it as short as possible.

Testator was an excellent and substantial business man. He was married twice. He had one daughter by his first marriage, Bernice Stephens Atkinson, who passed away December 24, 1959, and left two granddaughters, viz.: Doris Kettler and Jeanne Shaw, surviving. Testator's first marriage was terminated by divorce in 1916. He had one daughter by his second marriage, Betty Jean Stephens Perry, who survives him. His second marriage was terminated by divorce in 1948. His second wife had already passed away. He was about ninety (90) years of age when he executed his last will and testament, and was about ninety-three (93) years of age when he executed the codicil.

Testator's granddaughters, Doris Kettler and Jeanne Shaw, probably at the insistence of Doris Kettler, filed a civil suit against him in 1962. It was this suit that caused testator to make the codicil to his last will and cut the contestant out of everything but Five and no/100 ($5.00) Dollars. Testator's deposition was taken in that suit and he swore positively that the allegations in the suit were false and caused him to make the last change in his last will by the codicil.

Bessie Mae Roe filed a suit against testator in 1963 in which she alleged that she was testator's common law wife and was seeking a divorce and a division of their community property. She had been employed by testator for about twenty (20) years prior to the time she filed suit. She was named as a beneficiary under the will, provided she was still in his employ. She had a son, 4 or 5 years of age, who was in an orphan home at the time she started working for testator. He permitted Mrs. Roe to bring the boy there, and he reared and educated him as though the boy was his son.

In order to secure the favorable jury findings and get the last will and codicil admitted to probate in the District Court, the proponent offered evidence that the testator was an excellent and intelligent business man, fully capable to take care of scientific business affairs, and that he was not unduly influenced in making them. She offered testimony to show that testator started working for the Cotton Belt Railroad when he was only fifteen (15) years of age and became its youngest traveling auditor by the time he became twenty-one (21) years of age. He was one of sixteen (16) men that organized or formed the Magnolia Oil Company. He served as a director for Standard Oil Company. He was a technical advisor to Secretary Harold Ickes, by appointment of President Franklin D. Roosevelt, during World War II. He helped to organize the Mercantile National Bank, Dallas, Texas, was Chairman of the Board of Directors for a long time and continued to serve on the Board of Directors until his death; he attended every monthly meeting the year prior to his death. He was a mem-

ber of the Board of Directors of the Dallas Federal Savings and Loan Association, Dallas, Texas, and served until his death. He was a member of the Board of Directors and a member of the Executive Committee of the Southwestern Drug Corporation, Dallas, Texas. He owned a large amount of stocks in each of these corporations. The testator attended all the meetings of the Boards of Directors, including those that were held in October, 1960, the month he executed his last will, and in August, 1963, the month he executed the codicil to his last will. The evidence shows that he was mentally capable to make and execute his last will and codicil. There is no evidence that testator was unduly influenced by any person to make the last will and/or codicil.

The testimony offered by proponent was by the following witnesses: William E. Collins, Harold F. Kleiman, and Gene Emery, Lawyers, 2300 Republic National Bank Building, Dallas, Texas; Thomas S. Walker, Lawyer, employed by Dallas Federal Savings and Loan Association since December 15, 1928; Mrs. Mildred Swinney and Cynthia Wolfe, witnesses to the last will, secretaries employed by Thompson, Knight, Wright and Simmons, Lawyers, Dallas, Texas; William C. H. Jackson, employed by Dallas Federal Savings and Loan Association since February 1, 1923; Julius Schepps, a member of the Board of Directors, Mercantile National Bank; Milton Brown, Executive Vice President, President, Chairman of the Executive Committee, and Chairman of the Board of Directors of the Mercantile National Bank who had known the testator for about 47 years; Dr. Edwin M. Cleveland, a medical physician, who had treated the testator for minor illnesses, beginning in 1960, testified about testator's excellent mental capacities, and witnessed the codicil to his last will on August 13, 1963; Lloyd Bowles, President of Dallas Federal Savings and Loan Association, and Chairman of the Board of Directors, who had known the testator since 1946; Ben Wooten, who was Chairman of the Board of Directors of Dallas Federal Sav-

ings and Loan Association and had known the testator since 1935; C. B. Sample, Secretary and Treasurer of Southwestern Drug Corporation; and, Dr. George M. Underwood, Sr., a retired physician, who practiced in Dallas from October 1919 until 1965, a member of the Dallas Medical and Surgical Clinic, who was testator's physician from 1952 until 1962, who also testified as to his excellent mental capacities.

Now, as to the evidence in the case that was offered by the contestant: There is no evidence, direct or by bill of exceptions, that the testator was not mentally competent to make the will and the codicil at or about the time he executed them. He was very alert and active and was cognizant of the nature and extent of his property. He well knew his intentions and had expert knowledge as to the operation of the various trusts that was created by his last will and codicil. Also, such matters as estate taxes and the costs of administration. He knew what disposition he was making of all his property, and, what he wanted to make of it.

There is no evidence, direct or by bill of exceptions, that will show that the last will and/or codicil was procured or caused by any undue influence, at or about the time he executed them.

■ Bessie Mae Roe, who was actually "claiming" herself to be the common law wife of the testator, and Betty Jean Perry, a daughter of the testator, were heirs, devisees and legatees and were actual parties to the contest. Art. 3716 R.C.S.; 61 Tex. Juris 2nd 448, Sec. 292; Thomason v. Burch, Tex.Civ.App., 1949, 223 S.W.2d 320, W.R., N.R.E.; Apel v. Gallagher, Tex.Civ.App., 1955, 278 S.W.2d 527, W.R.,N.R.E.; Johnson v. Poe, Tex.Civ.App., 1948, 210 S.W.2d 264, W.R.,N.R.E. Bessie Mae Roe who was "claiming" to be the common law wife of the testator was definitely precluded from testifying under Art. 3716 R.C.S. She was "claiming" an interest in testator's estate. Adams v. Adams, Tex.Civ.App., 1939, 132 S.W.2d 497, N.W.H.; Brown v. Brown, Tex.Civ.App., 1938, 115 S.W.2d 786, N.W.

H.; Holman v. Holman, Tex.Civ.App., 1926, 283 S.W. 271, reversed on other grounds, Tex.Sup.Ct., 1926, 288 S.W. 413. See, also, Chandler v. Welborn, 1956, 156 Tex. 312, 294 S.W.2d 801; and, Ragsdale v. Ragsdale, 1944, 142 Tex. 476, 179 S.W.2d 291; Merriman v. Lary, Tex.Civ.App., 1947, 205 S.W.2d 100, W.R.,N.R.E.; Sheffield v. Leech, Tex.Civ.App., 1949, 221 S.W.2d 789, W.R.,N.R.E.

 The evidence was fully sufficient to support the jury's findings. There was no evidence offered by the contestant that the testator did not have the mental capacity to execute the last will and/or the codicil at, or about the time, of their execution, or that he was unduly influenced to do so. The points are overruled.

The judgment of the trial court is affirmed.